602 A.2d 849

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gary R. KUNISH, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1990.

Decided Jan. 28, 1992.

John J. Driscoll, Dist. Atty., Greensburg, for appellant.

Richard H. Galloway, Greensburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

■ In this appeal we must resolve the question of whether the trial court violated the double jeopardy clause when, after sentencing the appellee to a term of two and one-half to five years of incarceration, the court recalled the appellee and resentenced him for the same criminal offense to a term of three and one-half to seven years of incarceration. The double jeopardy clause set forth in the Pennsylvania Constitution is coextensive with federal constitutional standards.[1] *Commonwealth v. Sojourner*, 513 Pa. 36, 518 A.2d 1145 (1986).

The facts of this case are essentially undisputed. The appellee, following his conviction for voluntary manslaughter, was first sentenced in August of 1984, to a term of three and one-half to seven years of incarceration. The Honorable Judge Gilfert M. Mihalich of the Court of Common Pleas of Westmoreland County imposed the judgment

1. Art. 1, § 10 of the Pennsylvania Constitution provides, in pertinent part, as follows: "No person shall, for the same offense, be twice put in jeopardy of life or limb...." The Fifth Amendment to the United States Constitution provides, in pertinent part, as follows: "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...."

of sentence. Following a direct appeal from the judgment of sentence, the Superior Court remanded for resentencing, holding that the sentencing court had erred in relying upon a one to two year sentence enhancement for the use of a deadly weapon, which was prescribed by a statute not yet in effect at the time of appellee's criminal offense. Upon remand, a second sentencing hearing was held before Judge Mihalich, commencing at 9:30 a.m. on April 26, 1986. During this proceeding appellee's counsel argued that the intent of the Superior Court's decision was for the trial court to impose a two and one-half to five year term of incarceration for the voluntary manslaughter conviction. The Commonwealth responded by emphasizing the many factors considered by the court in imposing its original sentence, aside from the deadly weapons enhancement, and argued to the court that "... there is reason to keep the sentence as you originally gave it, and at least, Your Honor, we would ask that you resentence no lower than the two and a half to five." N.T., April 29, 1986, at 4.

The trial court then imposed a sentence of two and a half to five years, and in so doing, the court provided the following comments:

In this Court's prior sentence, the sentence for voluntary manslaughter—that's the verdict the jury found—was not as great because this Court did take into consideration the weapons enhancement provision. In this Court's prior sentence, the sentence for voluntary manslaughter would have been greater if the Court was not taking into consideration the weapons enhancement provision.

In imposing the sentence of two and a half years, the Court took into consideration the totality of the circumstances, including the weapons enhancement provision. In imposing the two-and-a-half-to-five-year [sic] sentence, the Court took into consideration the type of sentence that fits the crime, took into consideration the impact of

the offense upon the community, and the sentence was justified under the circumstances.

*Id.* at 5–6.

Within minutes after the appellee was escorted from the courtroom to be transferred to a correctional facility, the trial court recalled the appellee to the courtroom, and resentenced him to a term of three and one-half to seven years of incarceration:

I didn't realize until I was talking to my clerk that I made a mistake in reading the years. It was my intent to impose the same sentence, if you look at my reasons that I set forth. And I was making some notes; when Mr. Galloway was talking he mentioned two and a half to five years, and I marked that down. I am vacating my prior sentence because of an error, and the reasons that I set forth will indicate that there was an error.... I indicated to you when I gave my reasons that if I had not considered the weapons enhancement, my sentence would have been greater for the voluntary manslaughter....

*Id.* at 7–8. The trial court later denied appellee's motion challenging the propriety of this enhanced sentence. Upon appeal to the Superior Court appellee's sentence was modified to a term of two and one-half to five years on the grounds that the imposition of the enhanced sentence on April 29, 1986, subjected the appellant to double jeopardy. 363 Pa.Super. 639, 522 A.2d 661. The Superior Court relied upon our decision in *Commonwealth v. Brown,* 455 Pa. 274, 314 A.2d 506 (1977), which has been overruled. *See Commonwealth v. Jones,* 520 Pa. 385, 554 A.2d 50 (1989). The Commonwealth has sought relief in this Court.

We have most recently addressed the protections afforded by the double jeopardy clause in *Commonwealth v. Jones, id.,* wherein the trial court had imposed concurrent sentences of forty-eight to sixty-four months for rape, involuntary deviate sexual intercourse, and aggravated assault charges; a concurrent sentence of twenty-four to forty-eight months for possessing instruments of crime; and a consecutive three year term of probation for robbery. Im-

mediately following the imposition of sentence the judge realized that the sentences of forty-eight to sixty-four months were illegal, because the minimum sentences imposed were not equal to one-half of the maximum sentences as required by 42 Pa.C.S.A. § 9756(b). The court thus modified the sentences to reflect a maximum term of ninety-six months. The appellant was called before the court the following day, and at that time, he was advised of the modification of his sentence.

In *Jones*, we relied upon the decision of the United States Supreme Court in *U.S. v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), in concluding that there had been no double jeopardy violation in the modification of the original *illegal* sentence. We noted that, due to the mandatory statutory provision, the sentence originally imposed "would certainly have been corrected on appeal." *Jones, supra* 520 Pa. at 390, 554 A.2d at 52. We expressly overruled our prior decision in *Commonwealth v. Brown, supra*, which had relied upon decisions of the United States Supreme Court predating *U.S. v. DiFrancesco* for the proposition that a court is without power to increase an *existing* sentence once the defendant has begun to serve that sentence.

While the factual underpinnings of the United States Supreme Court's decision in *DiFrancesco* and our decision in *Jones* were analogous, the case presently before us is distinguishable from both of these decisions. In the case *sub judice*, the sentence first imposed by the trial court on April 29, 1986, was not illegal. No statute precluded the imposition of a sentence of two and one-half to five years. Thus, we must reach beyond our decision in *Jones* to resolve the matter before us. Accordingly, we first return to *U.S. v. DiFrancesco* for a closer examination. There, the defendant was convicted of federal racketeering offenses and sentenced as a dangerous special offender under 18 U.S.C. § 3576 to two ten-year prison terms to be served concurrently with a nine year sentence imposed in an unrelated federal trial. The government appealed, arguing

that the district court had abused its discretion in sentencing the defendant to only one additional year of incarceration under the dangerous offender statute. The court of appeals dismissed the government's appeal on double jeopardy grounds. *U.S. v. DiFrancesco*, 604 F.2d 769 (2d Cir.1979). The Supreme Court reversed, and in an Opinion authored by Justice Blackmun, the Court set forth the important constitutional principles which must serve as our polestar.

In *DiFrancesco* the Court noted that the double jeopardy clause is designed to preserve the finality of judgments and to prevent the State from making "... repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* (citations omitted). Further, although the guarantee against double jeopardy protects against multiple punishments for the same offense, the Court declined to hold that a criminal sentence has the qualities of constitutional finality and conclusiveness that have been accorded a verdict of acquittal. The Court recognized that historically, a criminal sentence has never carried such a high level of finality: "This accounts for the established practice in the federal courts that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence." *Id.* 449 U.S. at 134, 101 S.Ct. at 435.[2]

**2.** We recognize the Commonwealth's argument that because the appellee had not left the courthouse at the time he was recalled for resentencing, coupled with the fact that his sentence had not yet been reduced to writing, appellee had not "begun to serve" his sentence at the time the trial court increased the term of his sentence. In *DiFrancesco* the Supreme Court declined to comment on this purported limitation to the protections of the double jeopardy clause. We decline to adopt a "bright line" rule which would recognize constitutional finality in a sentence only upon the formal transfer of an individual from the jurisdiction of the courts to executive custody. At the time the appellee was sentenced to a two and one-half to five year term of incarceration by Judge Mihalich, the appellee began to serve

The Court also cited several of its prior decisions for the proposition that a sentence does not have the constitutional finality of an acquittal. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), no absolute bar was recognized to the imposition of a more severe sentence upon reconviction after successful appeal. Noting that there is "no double jeopardy protection against revocation of probation and the imposition of imprisonment," the *DiFrancesco* Court concluded that "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *DiFrancesco, supra* 449 U.S. at 137, 101 S.Ct. at 437.

Following a general review of the protections afforded by the double jeopardy clause, the Supreme Court held that an increase in sentence as a result of the statutorily authorized appeal by the government under the dangerous special offender statute would not constitute an unconstitutional multiple punishment. The Supreme Court ruled that none of its prior decisions, such as *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), had established a *per se* rule "that the trial court may not increase a sentence ... if the defendant has begun service of his sentence." *DiFrancesco, supra* 449 U.S. at 138, 101 S.Ct. at 437. The Court read its prior decisions as merely standing for the proposition that a court may not impose a sentence which is greater than that authorized by the legislature. Under the specific facts present in the *DiFrancesco* decision the Court concluded:

> that sentence. The language used by trial courts in imposing criminal sentences supports our conclusion. In the case *sub judice* the court announced that "It's the sentence of this Court that the defendant pay the costs of prosecution, and is committed to the Bureau of Corrections.... Stand committed." N.T., April 29, 1986, at 5–6. Further, the reality of the situation was that, upon the close of the sentencing proceeding, the appellee was not free to go, but was taken immediately by the authorities for transport to a correctional facility. Thus, at least for the purposes of the double jeopardy clause, appellee had begun to serve his sentence of two and one-half to five years at the close of the sentencing proceeding. We will not exalt form over substance.

Although it may be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.

*Id.* at 139, 101 S.Ct. at 438.

Importantly, the Supreme Court in *DiFrancesco* did not state that constitutional finality may never attach to a judgment of sentence. We believe that *DiFrancesco* must be read as finding that a defendant's legitimate expectation of finality in a sentence is protected by the double jeopardy clause. Decisions of the United States Supreme Court subsequent to the *DiFrancesco* decision, as well as several federal court decisions, support our interpretation. *See Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989); *Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985); *U.S. v. Cochran,* 883 F.2d 1012 (1989); *U.S. v. Fogel,* 829 F.2d 77 (1987); *U.S. v. Jones,* 722 F.2d 632 (1983). Circuit Judge Bork, in reaching the same conclusion in *U.S. v. Fogel, supra,* cogently stated:

One of the interests protected by constitutional finality is that of the defendant to be free from being compelled to "live in a continuing state of anxiety and insecurity." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The clause applies to "multiple punishment" because, if it did not apply to punishment, then the prohibition against "multiple trials" would be meaningless; a court could achieve the same result as a second trial by simply resentencing a defendant after he has served all or part of an initial sentence.... Similarly, if a court can increase a defendant's sentence after service has begun, for any reason, or for no reason at all, then the interest in protecting a defendant from being

compelled to live in a continuing state of anxiety is lost. This anxiety would seem to be the same as, or akin to, that which would follow from the knowledge that a defendant can be tried again.... It would seem to follow that a defendant has, barring any awareness to the contrary, an expectation of finality in the severity of a sentence that is protected by the double jeopardy clause.

*Id.* at 88 (citations omitted).

The circumstances under which a defendant may claim a legitimate expectation in the finality of his sentence, subject to the protections of the double jeopardy clause, must await precise definition in our case law. However, it is certain that some general principles may be set forth. As in *DiFrancesco, supra,* and in *Jones, supra,* statutes relevant to the length of a defendant's sentence may defeat a legitimate expectation of finality. A criminal defendant is charged with knowledge of applicable statutory provisions. *See U.S. v. DiFrancesco, supra* at 136, 101 S.Ct. at 437. Further, where a defendant challenges the original sentence, appeals from the conviction, or otherwise challenges the conviction or sentence, no legitimate expectation of finality will attach. *See U.S. v. Fogel, supra* at 89. It has also been noted that where "... one intentionally deceives the sentencing authority or thwarts the sentencing process.... [he] can have no *legitimate* expectation regarding the sentence thereby procured." *U.S. v. Jones,* 722 F.2d 632 (11th Cir.1983) (emphasis in original).

Presently, we hold that the statements of Judge Mihalich at the time the sentence of two and one-half to five years was imposed on April 29, 1986, deprived the appellee of any legitimate expectation of finality in the length of his sentence. As is quite evident from the judge's statements, he clearly intended to impose the same sentence that he had originally imposed in 1984. He was mistaken, however, concerning the term of the 1984 sentence. When he realized that his sentence did not comport with the intention he expressed on the record, Judge Mihalich promptly recalled the appellee and resentenced him. The resentencing did not

violate appellee's double jeopardy rights. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza v. United States,* 330 U.S. 160, 166–167, 67 S.Ct. 645, 648–649, 91 L.Ed. 818 (1947).

Accordingly, the order of the Superior Court is reversed, and the April 29, 1986, sentence of the Court of Common Pleas of Westmoreland County, sentencing appellee to a term of three and one-half to seven years of incarceration for the offense of voluntary manslaughter is reinstated.

CAPPY, J., files a Concurring Opinion in which PAPADAKOS, J., joins.

ZAPPALA, J., concurs in the result.

CAPPY, Justice, concurring.

Although I agree with the result reached by the majority in reversing the decision of the Superior Court, I disagree with the rationale relied upon in reaching that conclusion. I write separately because I believe the majority should have reinstated the original sentence of the trial court, three and one-half to seven years, for a more elementary reason. Namely, as the two and one-half to five year sentence imposed by the trial court on remand was an obvious mistake resulting in an internal inconsistency, it could not be deemed final for purposes of double jeopardy.

Kunish had originally been sentenced to two and one-half to five years on voluntary manslaughter and one to two years for the use of a deadly weapon for a total of three and one-half to seven years. On the first appeal, the Superior Court remanded for resentencing upon a determination that the deadly weapon enhancement imposed by the trial court was not applicable at the time the offense was committed.[1] On remand, the trial court mistakenly resen-

---

1. Although not specifically cited by either the Superior Court opinion or the majority opinion herein, I presume that the deadly weapon enhancement provision of the sentencing guidelines found inapplica-

tenced Kunish on the voluntary manslaughter charge to two and one-half to five years, but quickly corrected its mistake and resentenced Kunish to three and one-half to seven years. Thereafter, Kunish timely appealed and the Superior Court modified his sentence by imposing two and one-half to five years. That court determined that the trial court's correction of its error through resentencing subjected Kunish to double jeopardy. Allocatur was then granted by this Court.

Upon review of the transcript of the sentencing proceeding held by Judge Mihalich on April 29, 1986, I believe it is clear that on remand, Judge Mihalich intended to resentence Kunish to the same three and one-half to seven year sentence as originally imposed. On remand, Judge Mihalich stated that the only reason the original sentence on voluntary manslaughter was split two and one-half to five years plus one to two years was because of the deadly weapon enhancement. Accordingly, Judge Mihalich's imposition on remand of three and one-half to seven years for voluntary manslaughter without enhancement due to the use of a deadly weapon, was consistent with his original intent in sentencing Kunish for this crime. Judge Mihalich's many references to the original sentence imposed against Kunish further support this conclusion. While the original sentence was three and one-half to seven years, Judge Mihalich repeatedly referred to an original sentence of two and one-half to five years. Specifically, in resentencing Kunish, Judge Mihalich stated:

It's the sentence of this Court that the defendant pay the costs of prosecution, and is committed to the Bureau of Corrections for a period of not less than two and a half years, not more than five years, on the conviction of

ble by the Superior Court is that set forth at 42 Pa.C.S.A. § 9721, Guideline § 303.4(a), which provides:

When the court determines that the defendant possessed a deadly weapon, as defined in 18 Pa.C.S. § 2301 (relating to definitions), during the commission of the current conviction offense; at least 12 months and up to 24 months confinement shall be added to the guideline sentence range which would otherwise have been applicable.

voluntary manslaughter, because any lesser sentence would degrade the seriousness of that crime.

In this court's prior sentence, the sentence for voluntary manslaughter—that's the verdict the jury found—was not as great because this Court did take into consideration the weapons enhancement provision. *In this Court's prior sentence, the sentence for voluntary manslaughter would have been greater if the Court was not taking into consideration the weapons enhancement provision.*

In imposing the sentence of *two and a half years to five years,* the Court took into consideration the totality of the circumstances, including the weapons enhancement provision. In imposing the *two-and-a-half-to-five-year* sentence, the Court took into consideration the type of sentence that fits the crime, took into consideration the impact of the offense upon the community, and the sentence was justified under the circumstances.

And those are the reasons that I'm setting forth the imposition of the two-and-a-half-to-five-year sentence.

Stand committed. (N.T. p. 5). [emphasis added].

There is little doubt that Judge Mihalich intended to resentence Kunish to three and one-half to seven years incarceration. Given Judge Mihalich's expressed intent on remand and his mistaken references to a prior sentence of two and one-half years to five years, his imposition of a sentence of only two and one-half to five years contained an internal inconsistency.

Based upon this internal inconsistency, the initial resentencing of Kunish to two and one-half to five years could not give rise to a reasonable degree of finality. Therefore, the decision of the trial court to have Kunish returned to the court room within thirty minutes for imposition of the corrected sentence of three and one-half to seven years did not subject Kunish to double jeopardy.

Accordingly, as the initial resentencing was not final for this reason, I find it unnecessary in this instance to address

the other factors addressed by the majority concerning finality of sentence for purposes of double jeopardy.

PAPADAKOS, J., joins this concurring opinion.