J-S72013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ELSWART R. BODDEN | |
| Appellant | No. 2085 MDA 2015 |

Appeal from the Judgment of Sentence August 26, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004373-2014

BEFORE:  GANTMAN, P.J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                FILED OCTOBER 06, 2016

Appellant, Elswart R. Bodden, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his convictions for attempted homicide, aggravated assault, robbery, burglary, and theft by unlawful taking.[1]  Specifically, Appellant challenges the trial court's denial of his request for the approval of funds to secure an eyewitness identification expert.  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

_____

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 3701(a)(1)(i), 3502(a)(1), and 3921(a), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

Appellant raises the following issue for our review:

DID THE TRIAL COURT ERR BY REFUSING [APPELLANT'S] COURT APPOINTED COUNSEL'S REQUEST FOR THE PROVISION OF FUNDS TO HIRE AN EYEWITNESS IDENTIFICATION EXPERT?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Howard F. Knisely, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed March 4, 2016, at 14-16) (finding: *Commonwealth v. Walker*, 62 Pa. 450, 92 A.3d 766 (2014), did not grant defendants absolute right to present expert testimony regarding eyewitness identification, but limited its use to instances where Commonwealth's case is solely or primarily dependent on eyewitness testimony; here, Commonwealth presented ample evidence beyond victim's identification testimony to link Appellant to charged crimes; evidence included officers' observations of Appellant fleeing scene in his girlfriend's car, Appellant's girlfriend's cell phone and charger recovered from scene, Appellant's fingerprints on pack of cigarettes found outside victim's apartment window, Appellant's DNA on cigarette butt found in same location, Appellant's fingerprints on gun stolen from victim's apartment, traces of victim's blood and DNA on several items of Appellant's clothing, and scratches and lacerations on Appellant's neck and hands consistent with

use of knife in violent confrontation; Appellant admitted he broke into victim's residence and stole purse, gun, and change jar; thus, court determined expert testimony on potential fallacy of eyewitness identification was not appropriate for this case, and therefore court's decision to deny funds for proposed expert was not abuse of discretion). The record supports the court's decision. Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2016

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :

           :   $C$

    vs.        : Nos. 4373, 4374-2014

           :

ELSWART RICHARD BODDEN  :

## OPINION

BY: KNISELY, J.                 March 4, 2016

   Defendant Elswart Richard Bodden has filed a direct appeal to the Superior Court of

Pennsylvania from his judgment of sentence imposed on September 14, 2015 and finalized by

the Court's denial of his post-sentence Motion to Modify Sentence on November 18, 2015. On

appeal, Defendant alleges that this Court, (1) erred by denying his motion to suppress statements

he made to police while in custody, (2) erred by denying his motion *in limine* to exclude

photographs and a display of the victim's wounds taken at the hospital while she was being

treated for her injuries, (3) erred by denying his request for the approval of funds to secure an

eyewitness identification expert, and (4) erred when it resentenced Defendant to a longer term of

incarceration in response to the Commonwealth's Motion to Modify the original sentence.[1] This

Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

---

[1] *See* Defendant's Preliminary Rule 1925 Statement and Request for Extension of Time to Supplement Same Upon Receipt of the Notes of Testimony from Suppression, Pre-Trial, and Trial, filed January 28, 2016 (hereinafter "Defendant's Concise Statement at __") at 2-3.

# BACKGROUND

On September 7, 2014, Defendant broke into Annika Horn's home and brutally assaulted her for at least an hour.[2] That evening, between 10 p.m., and 11 p.m., Ms. Horn was home alone inside her Lancaster City apartment when she heard noises downstairs and her two cats ran into her bedroom, clearly frightened.[3] As she investigated the disturbance, she came face-to-face with her attacker, Defendant.[4] Ms. Horn saw that Defendant was holding a hunting knife.[5] Defendant was also wearing black basketball-style mesh shorts, a white t-shirt, and white Nike sneakers.[6] Defendant, a self-described drug dealer, admitted that he broke into Ms. Horn's home to steal her boyfriend's guns and money.[7]

Defendant climbed the stairs to where Ms. Horn was standing, held his knife to her neck, forced her into a bedroom, and then began his assault.[8] First, he struck Ms. Horn over the head two or three times with the butt of his knife.[9] Then, when Ms. Horn attempted to fight back, Defendant starting repeatedly stabbing her.[10] As Ms. Horn continued to resist and fight, Defendant continued to stab her; he stabbed Ms. Horn in the neck, throat, sides, and stomach.[11] At one point Defendant tried to strangle and suffocate Ms. Horn with a washcloth.[12]

Defendant would periodically stop stabbing Ms. Horn and walk throughout her apartment, looking for various items to steal.[13] Defendant also briefly stopped stabbing Ms.

---

[2] *See* Transcript of Proceedings, Jury Trial, June 8-12, 2015 (Knisely, J.) (hereinafter "N.T. Jury Trial at __") at 158, 204.
[3] N.T. Jury Trial at 123-24.
[4] N.T. Jury Trial at 127.
[5] N.T. Jury Trial at 127, 136-37.
[6] N.T. Jury Trial at 127, 136-37, 901.
[7] N.T. Jury Trial at 893.
[8] N.T. Jury Trial at 139-40, 144.
[9] N.T. Jury Trial at 145.
[10] N.T. Jury Trial at 146.
[11] N.T. Jury Trial at 147-49.
[12] N.T. Jury Trial at 150.
[13] N.T. Jury Trial at 150.

Horn to make a phone call.[14] Nevertheless, Defendant returned to the bedroom between five and ten times to check to see if Ms. Horn was still alive and, upon seeing that she was, would stab her again.[15] Ms. Horn testified that each subsequent stabbing become slower and more deliberate.[16]

Eventually, Defendant asked Ms. Horn whether she wanted to die by having her throat slashed, again, or have her wrist cut; Ms. Horn chose her wrist.[17] Defendant then carved into her wrist, slowly sawing back and forth.[18] At one point Defendant even asked Ms. Horn if she had a sharper knife he could use on her wrist due to the dullness of his knife's blade.[19] To explain his torture, Defendant told Ms. Horn "I have to finish it, because you saw what I look like . . . I can't leave until you're dead."[20] In total, over the course of more than one hour, Defendant stabbed Ms. Horn approximately 25 times in vital areas of her body, including her throat, neck, head, stomach, and chest.[21] Before leaving, Defendant stole Ms. Horn's purse, a change jar of quarters, and a handgun.[22]

After Defendant left her home, Ms. Horn was able to call 911 and receive medical attention. Police and medical personnel arrived and Ms. Horn was transported to Lancaster General Hospital.[23] She was treated by Dr. Jeffery Anderson, who specializes in trauma and critical surgical care.[24] In addition to her numerous stab wounds, Dr. Anderson testified that Ms.

[14] N.T. Jury Trial at 152.
[15] N.T. Jury Trial at 152-53.
[16] N.T. Jury Trial at 153.
[17] N.T. Jury Trial at 153.
[18] N.T. Jury Trial at 192.
[19] N.T. Jury Trial at 192.
[20] N.T. Jury Trial at 155.
[21] N.T. Jury Trial at 665.
[22] N.T. Jury Trial at 171, 571-72.
[23] N.T. Jury Trial at 162-63.
[24] N.T. Jury Trial at 659.

3

Horn had other significant injuries, including a skull fracture, a ruptured blood vessel in her neck, and blood in her right lung.[25] The severity of the injuries to vital areas of her body left Ms. Horn at a substantial risk of death and Dr. Anderson had to perform several surgeries to save her life.[26] In total, as a result of Defendant's attack, Ms. Horn has undergone between eight and ten major surgeries, including the removal of part of her intestine.[27] She also has numerous scars throughout her body and nerve damage in her arms and hands.[28]

As Lancaster City Police units started arriving on scene in response to Ms. Horn's 911 call, Sergeant Glen Stoltzfus watched a dark-colored Honda Civic strike another police cruiser as the driver attempted to rapidly flee from the scene.[29] Police later determined that the vehicle was registered to Cassandra Ravegum, Defendant's girlfriend at the time.[30] Ms. Ravegum testified that she had allowed Defendant to use her car the night of his attack.[31] Several additional officers on scene saw that a black male driver with a white t-shirt was the driver of the vehicle and its sole occupant.[32] Police engaged in a high-speed chase before losing contact with the vehicle.[33]

Defendant admitted to driving the car, and testified that he fled to the home of his best friend, Angel Pacheco.[34] Mr. Pacheco testified that Defendant appeared scared and admitted that he had just gotten into a police chase.[35] Mr. Pacheco further testified that Defendant also

---

[25] N.T. Jury Trial at 664.
[26] N.T. Jury Trial at 666, 672.
[27] N.T. Jury Trial at 168.
[28] N.T. Jury Trial at 167-68.
[29] N.T. Jury Trial at 219.
[30] N.T. Jury Trial at 276-77, 373-74.
[31] N.T. Jury Trial at 276-77, 373-74.
[32] N.T. Jury Trial at 255-56, 583, 829.
[33] N.T. Jury Trial at 586-88, 857.
[34] N.T. Jury Trial at 612, 616, 916, 944.
[35] N.T. Jury Trial at 616.

admitted that he committed a robbery earlier that evening, stealing a gun, a purse, and some change.[36] Defendant then arranged for a taxi cub to pick him up and take him to outside a laundromat in Lancaster City.[37] When Defendant reached his destination he paid his cab fare in quarters.[38]

Devon Graves, another friend of Defendant, testified that Defendant showed up at his house the night of the attack looking for a place to sleep.[39] Mr. Graves saw that Defendant brought a bag of change with him.[40] The morning after the attack Defendant went back to his Ms. Ravegum's home and she testified that Defendant showed her a black handgun, which she had never seen him in possession of on any prior occasion.[41] The gun and a bag of change were eventually found in the home of Ms. Ravegum's best friend, Alla Brennan, shortly after Defendant and Ms. Ravegum had left that residence.[42] The serial number on the gun that was recovered matched the serial number of the gun stolen from Ms. Horn's apartment.[43] Results of forensic testing showed that Defendant's DNA was found on the gun.[44]

During their investigation of the crime scene, police also found a cellphone, cellphone charger, a pack of Newport cigarettes, and a discarded cigarette butt on the balcony outside of the room where Ms. Horn was attacked.[45] All of this evidence was photographed, collected, and sent for forensic analysis.[46] Police learned that the cellphone and charger also belonged to Ms.

---

[36] N.T. Jury Trial at 619.
[37] N.T. Jury Trial at 647-48, 651-52.
[38] N.T. Jury Trial at 655.
[39] N.T. Jury Trial at 688, 692.
[40] N.T. Jury Trial at 688, 692.
[41] N.T. Jury Trial at 423.
[42] N.T. Jury Trial at 500-01.
[43] N.T. Jury Trial at 698-99.
[44] N.T. Jury Trial at 800-801.
[45] N.T. Jury Trial at 316-17, 593.
[46] N.T. Jury Trial at 320-22.

5

Ravegum, and she testified that Defendant was also in possession of both items on September 7.[47] Detective David Weiser, a certified fingerprint examiner, was able to lift one fingerprint off the cigarette pack to compare against Defendant's fingerprint sample.[48] Detective Weiser determined that the fingerprints matched to a reasonable degree of professional certainty.[49] Moreover, the Pennsylvania State Police Crime Lab confirmed that Defendant's DNA was also found on the discarded cigarette butt.[50]

Police eventually located and apprehended Defendant at his friend Alex Crabbe's house. Police observed that Defendant had several scratches on his neck, and several lacerations on his hands that were consistent with someone using a knife in a violent confrontation.[51] Moreover, at the time he was taken into police custody, Defendant was not wearing shoes or a shirt; he was only wearing jeans.[52] However, Mr. Crabbe testified that throughout the entire time Defendant was at his house, including the moments just prior to his arrest, Defendant was wearing jeans, sneakers, and a white t-shirt.[53] A search inside Mr. Crabbe's home revealed several articles of Defendant's clothing which he had attempted to hide inside the house, including his white Nike sneakers, his white t-shirt, and a pair of black basketball shorts.[54] Forensic analysis of Defendant's clothing established that traces of Ms. Horn's blood were found on his shorts and sneakers.[55]

---

[47] N.T. Jury Trial at 396.
[48] N.T. Jury Trial at 724, 748-49.
[49] N.T. Jury Trial at 749-50.
[50] N.T. Jury Trial at 813.
[51] N.T. Jury Trial at 849.
[52] N.T. Jury Trial at 544, 847.
[53] N.T. Jury Trial at 538.
[54] N.T. Jury Trial at 447-50, 596-602.
[55] N.T. Jury Trial at 807-12.

As a result, Defendant was charged at docket 4373-2014 with one count of Criminal Attempt – Criminal Homicide,[56] one count of Aggravated Assault,[57] one count of Robbery,[58] one count of Burglary,[59] and one count of Theft by Unlawful Taking.[60] At docket 4374-2014, Defendant was charged with one count of aggravated assault,[61] one count of fleeing or attempting to elude officers,[62] and three counts of recklessly endangering another person.[63] On June 12, 2015, following a jury trial, Defendant was convicted on all charges at docket 3473-2014, and convicted of fleeing or attempting to eluding police and one count of recklessly endangering another person on docket 3474-2014.

On August 26, 2015, Defendant appeared before this Court for sentencing. Prior to announcing Defendant's sentence, this Court explained the following:

> The court is departing from the guidelines relative to certain charges because ... [t]here are multiple current convictions. There is repeat criminal behavior. The series of offenses are more serious and significant than usual. [Defendant] is a clear and present danger to society. The [Defendant] shows no remorse whatsoever for more than an hour of clear torture.
>
> The [Defendant] severely injured the victim to the point of death. The [Defendant] is an admitted drug seller. His only life's occupation. The [Defendant] inflicted extreme mental and physical cruelty to the victim... The [Defendant] held the victim hostage for the purpose of torture and death. The victim's injuries were substantially in excess of the minimum necessary to prove these crimes. But for [the victim's] desire and ability to live and survive, this would be a death penalty hearing.[64]

---

[56] 18 Pa. C.S.A. §901(a).
[57] 18 Pa. C.S.A. §2702(a)(1).
[58] 18 Pa. C.S.A. §3701(a)(1)(i).
[59] 18 Pa. C.S.A. §3502(a)(1).
[60] 18 Pa. C.S.A. §3921(a).
[61] 18 Pa. C.S.A. §2702(a)(6).
[62] 18 Pa. C.S.A. §3733(a).
[63] 18 Pa. C.S.A. §2705.
[64] Transcript of Proceedings, Sentencing, August 27, 2015 (Knisely, J.) (hereinafter "Sentencing at __") at 28-29.

7

Defendant was then sentenced to an aggregate period of incarceration of not less than 27½ years nor more than 75 years.[65] In fashioning Defendant's original sentence, on the count of attempted murder, this Court, sentenced Defendant to a period of 10 years to 20 years' incarceration, consistent with the information contained within the Pre-Sentence Investigation Report ("PSI Report") with respect to the statutory maximum for that offense.[66] However, immediately after announcing that portion of the sentence, the Commonwealth noted that the PSI Report contained an error; the statutory maximum for attempted murder should have been listed as a period of 40 years rather than 20 years because the jury found that Defendant had inflicted serious bodily injury.[67] Although the full sentence was not imposed as of that point in time, this Court believed that because it had already announced Defendant's sentence at Count 1, it could not modify Defendant's sentence with respect to that particular count but for a request for modification by the Commonwealth.[68] As such, this Court chose to impose sentence on the remaining counts for both dockets.[69]

On September 1, 2015, the Commonwealth filed a Motion for Modification of Sentence pursuant to Pa.R.Crim.P. 721.[70] On September 14, 2015, Defendant reappeared before this Court for a Resentencing Hearing. During the hearing, the Court noted that at the original sentencing it "clearly placed on the record ..., the multiple reasons, more than a dozen, for an aggravated sentence."[71] After acknowledging its failure to not recognize the error contained within the PSI

---

[65] Sentencing at 32.
[66] Sentencing at 29-30.
[67] Sentencing at 30.
[68] Transcript of Proceedings, Resentencing, September 14, 2015 (Knisely, J.) (hereinafter "Resentencing at __") at 12.
[69] Resentencing at 12.
[70] *See* Commonwealth's Motion for Modification of Sentence, filed September 1, 2015.
[71] Resentencing at 10-11.

8

report, this Court further explained its intent and reasoning behind Defendant's original sentence, stating:

> The Court based the maximum sentence permitted by law on the maximum presented in the original Pre-Sentence Investigation of 20 years. This court gave all of the reasons why on Count 1 and Count 3 it was going to give a maximum sentence; and based on its understanding that each of those was a 20-year maximum sentence, it imposed a sentence on each of 10 to 20 years.
>
> [T]he record is clear to show . . . that the court did impose the sentence as to Count 1 and Count 3 before the Commonwealth brought to my attention that it was really a 40-year maximum, and correctly so based on the jury's verdict as to Section 102(c) of Title 18 for this attempted murder with serious bodily injury, as appropriately found by the jury, which calls for a 40-year maximum...
>
> The Court concurs with the Commonwealth that a 40-year maximum was the appropriate maximum that should have been considered by the Court. It was the appropriate maximum that both the defense as well as Commonwealth should have been fully knowledgeable of and that the Court itself should have noted prior to the time of sentencing.
>
> The Court feels that a modification of sentence is warranted because . . . the Court was not knowledgeable of [the appropriate maximum] prior to the imposition of the sentence on Count 1.[72]

The Court then proceeded to resentence Defendant on Count 1 to a period of 20 years to 40 years' incarceration.[73] All of the other parts of Defendant's sentence remained as originally imposed at the August 26, 2015 sentencing.[74] In sum, Defendant was sentenced to an aggregate period of incarceration of not less than 37½ years nor more than 95 years.[75]

On September 17, 2015, Defendant filed his Motion to Modify Sentence.[76] Defendant argued that the Court violated the Double Jeopardy Clause of the United States and Pennsylvania Constitutions and well as his right to due process when it resentenced Defendant to a greater

---

[72] Resentencing at 11-12.
[73] Resentencing at 12.
[74] Resentencing at 13.
[75] Resentencing at 13.
[76] Defendant's Motion to Modify Sentence, filed September 17, 2015.

9

term of incarceration.[77] The Court denied Defendant's motion by Order of November 18, 2015.[78] The instant appeal followed.

## DISCUSSION

Defendant alleges four claims of trial court error. Defendant's first claim alleges that the trial court erred in denying his pretrial motion to suppress statements he made to police while in custody.[79] A review of the record reveals that Defendant filed a suppression motion on November 19, 2014 challenging the admissibility of his statements to police.[80] However, the record further reveals that Defendant withdrew that challenge at the beginning of his pretrial hearing on June 4, 2015, and Defendant did not present any argument regarding the admissibility of such statements at that hearing.[81] There were no other documents or motions subsequently filed relative to Defendant's statements to police.

Under the Pennsylvania Rules of Appellate Procedure, any "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Defendant's withdrawal of his pretrial suppression motion waived any issues with respect to his statements to police, and he is precluded from now raising that issue on appeal. *See* Pa.R.A.P. 302; *see also, Commonwealth v. Bartee*, 868 A.2d 1218, 1221 n.6 (Defendant waived appellate review of issues raised in omnibus pretrial motion that was later withdrawn). Accordingly, Defendant's first claim of error is without merit.

Defendant's second assignment of error is that the trial court erred by denying his motion *in limine* to exclude the Commonwealth from admitting into evidence, or displaying to the jury,

---

[77] Defendant's Motion to Modify Sentence, filed September 17, 2015.
[78] Order of Court, Defendant's Motion to Modify Sentence (November 18, 2015).
[79] Defendant's Concise Statement at 2.
[80] Defendant's Motion to Suppress, filed November 19, 2014.
[81] Transcript of Proceedings, Pretrial Hearing, June 5, 2015 (Knisely, J.) (hereinafter "Pretrial at __") at 3.

10

photographs of Ms. Horn's surgical wounds and scarring that she sustained from medical treatment as a result of Defendant's attack.[82] Initially, this Court notes that the record demonstrates that Defendant has not preserved any objection to the photographs for appeal. At the pretrial hearing on Defendant's motion, this Court reserved ruling on Defendant's motion until Dr. Anderson was called to testify at trial.[83] During trial, and in particular, during Dr. Anderson's testimony, Defendant's counsel did not object to exhibit 26, the photographs which depicted the injuries Ms. Horn sustained as well as the signs of treatment she had received by her doctors.[84] Consequently, Defendant waived his objection to the photographs introduced during trial. *See Commonwealth v. Solana*, 906 A.2d 1180, 1191 (Pa. 2006)(defendant waived objection to admission of photographs from homicide victim's autopsy where evidence was admitted without objection); *Commonwealth v. Bruce*, 916 A.2d 657, 670 (Pa.Super. 2007)(defendant waived objection to admission of photographs by failing to object when Commonwealth moved for their admission).

Nevertheless, even if the issue was properly preserved, Defendant's claim that this Court erred is without merit. The admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. *Commonwealth v. Rivera*, 983 A.2d 1211, 1228 (Pa. 2009) (citing *Commonwealth v. Baumhammers*, 960 A.2d 59 (Pa. 2008). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of

---

[82] Defendant's Concise Statement at 3.
[83] Pretrial at 12.
[84] N.T. Jury Trial at 668, 863.

11

partiality, prejudice, bias or ill-will." *Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa. Super. 2002) (citing *Commonwealth v. Smith*, 543 Pa. 566, 571, 673 A.2d 893, 895 (1996)).

Under Pennsylvania law, when determining whether photographs of a victim's injuries are admissible, the trial court must engage in a two-step analysis. *Commonwealth v. Buehl*, 508 A.2d 1167, 1182 (Pa. 1986). First, the court must determine whether the photographs are inflammatory. *Id.* If and only if the photographs are deemed to be inflammatory, then the trial court must decide whether or not the photographs are of such essential evidentiary value that their "need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." *Id.*

Evidence of injuries actually sustained by a victim, as depicted in photographs taken immediately following a violent attack, are an indication of the force and violence used by the defendant, a factor which is clearly relevant to the degree of harm intended. *See Commonwealth v. Dennis*, 460 A.2d 255, 258 (Pa.Super. 1983). For instance, in *Commonwealth v. Stein*,[85] during an attempted homicide trial, the Commonwealth was permitted to admit several photographs depicting the victim's injuries. *Stein*, 548 A.2d 1230, 1233 (Pa.Super. 1988). The photographs depicted the victim immediately following the incident, and included photographs of the victim's wounds taken while he was hospitalized. *Id.* The Superior Court held that the trial court did not abuse its discretion by finding that the photographs were admissible. *Id.* at 1234. In so holding, the Superior Court reasoned that photographic evidence of the victim's wounds were relevant to proving that the defendant had an intent to kill the victim, a necessary element for proving the crime of attempted homicide. *Id.* at 1233. The Superior Court also reasoned that despite the gruesome nature of the photographs, a defendant "will not be permitted to brutalize

---

[85] *Commonwealth v. Stein*, 548 A.2d 1230 (Pa.Super. 1988).

12

his victim and then keep the jury from learning exactly how brutal the assault was." *Id.* at 1234. Furthermore, even where the body's condition can be described through other forms of evidence, such as testimony from a medical examiner, such testimony does not preclude admission of photographs showing the victim's injuries and condition. *Commonwealth v. Rush*, 646 A.2d 557, 560 (Pa. 1994)(citations omitted).

Here, the record reveals that this Court weighed the inflammatory nature of the photographs against the Commonwealth's need for using them, and appropriately allowed the photographs to be admitted into evidence. Defendant was charged with numerous violent crimes, including attempted murder and aggravated assault. A person commits the crime of attempted murder when he takes a substantial step toward the commission of a killing, with the specific intent to commit such an act. 18 Pa. C.S.A. §§ 901, 2502; *Commonwealth v. Packard*, 767 A.2d 1068, 1071 (Pa.Super. 2001). To sustain a conviction for aggravated assault, the Commonwealth must prove the defendant "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S.A. § 2702(a)(1); *Commonwealth v. Smith*, 626 A.2d 614, 620 (Pa.Super. 1993). Although the jury heard detailed testimony regarding the gruesome nature and seriousness of Ms. Horn's injuries, the admission of the photos was well grounded as they were plainly probative of Defendant's intent to kill and inflict serious bodily injury. Evidence of injuries actually sustained by Ms. Horn, as depicted in photographs taken after she underwent life-saving medical procedures, were a clear indication of the force and violence used by Defendant, factors which are clearly relevant to the degree of harm he intended.

13

The photographs were probative of informing the jury where exactly the injuries occurred, the severity of the injuries, and also allowed Ms. Horn's emergency room doctor, Dr. Anderson, to testify about the nature of the treatment that was necessary to save her life. The photos served to provide the jury with a better understanding of the malicious manner in which Defendant assaulted Ms. Horn, and made the jury aware of the extensive medical treatment she received as a result. The jurors, by gaining insight into the full magnitude of harm Defendant caused, were placed in a better position to assess the nature and intent of Defendant's actions.

Moreover, the photos were few in number and, being presented to the jury in black and white rather than color, safely understated the true nature of Ms. Horn's injuries and the medical procedures that were necessary to save her life. This Court also repeatedly cautioned the jury, both at the time the photographs were admitted and again in its charge, as to the limited purpose for which the photographs were being admitted.[86]

In sum, this Court determined that the photographs were relevant and necessary for the Commonwealth to meet its burden of proving elements of some of the crimes charged beyond a reasonable doubt, and also helpful in enhancing the jury's understanding of the nature and extent of Defendant's crimes. Excluding the photographs would have permitted Defendant to brutally torture Ms. Horn and then keep the jury from learning exactly how brutal his torture was. Therefore, because the evidentiary value of these photographs outweighed any possible prejudice, their admission was not an abuse of discretion and Defendant is not entitled to relief.

Defendant's third claim of error is that the trial court erred in its denial of funds to permit Defendant to hire an eyewitness identification expert.[87] The appointment of an expert witnesses

---

[86] N.T. Jury Trial at 667, 1037.
[87] Defendant's Concise Statement at 3.

14

and the provision of public funds to hire them to assist in the defense against criminal charges is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. Wholaver*, 989 A.2d 883, 894 (Pa. 2010)(citations omitted). Defendant claims this Court improperly denied his request for an eyewitness identification expert by relying upon *Commonwealth v. Walker*,[88] where our Supreme Court held that "the admission of expert testimony regarding eyewitness identification is no longer *per se* impermissible in our Commonwealth." *Walker*, 92 A.3d 766, 792-793. Although the *Walker* decision reconsidered and overruled prior Pennsylvania case law which absolutely banned expert testimony in the area of eyewitness identification, the case did not also simultaneously grant defendants an absolute right to present expert testimony in that area. Instead, our Supreme Court indicated that such expert testimony would "be limited to certain cases . . . where the Commonwealth's case is *solely or primarily dependent upon eyewitness testimony.*" *Id.* at 787 (emphasis added). Our Supreme Court also left it within the discretion of the trial court to weigh the admissibility of expert testimony on eyewitness identification and determine on a case-by-case basis when such an expert would be appropriate. *Id.* at 792.

In this case, the Court's decision to preclude expert testimony on eyewitness identification was not an abuse of discretion. The facts of the instant case are significantly distinguishable from the facts in *Walker*. In *Walker,* the sole evidence to establish the defendant's guilt was the testimony of a victim who was under extreme duress when assaulted at gunpoint by a stranger of another race. *See* 92 A.3d at 770. By contract, in this case the Commonwealth presented ample evidence linking Defendant to the crimes beyond Ms. Horn's testimony.

---

[88] *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014).

15

Evidence presented by the Commonwealth included Defendant being observed by Lancaster City Police officers fleeing from the scene of the crime by using his girlfriend's vehicle to force his way through police cruisers. The police also found Ms. Ravegum's cellphone and cellphone charger at the scene and the evidence proved that Defendant was in possession of both on the night of his attack. Forensic testing showed that Defendant's fingerprints were found on a pack of Newport cigarettes and his DNA on a discarded cigarette butt, both of which were found outside Ms. Horn's apartment window. Fingerprint analysis also showed that Defendant's fingerprints were found on the gun that was stolen from Ms. Horn's home. Additional forensic testing revealed that traces of Ms. Horn's blood and DNA were found on several items of Defendant's clothing, each of which he had tried to hide before being taken into police custody. Police also observed that Defendant had several scratches on his neck, and several lacerations on his hands that were consistent with someone using a knife in a violent confrontation. Several witnesses, most of whom were Defendant's close friends at the time of the attack, also testified to observing Defendant in possession of items reported stolen from Ms. Horn's home on the night she was attacked. Moreover, Defendant admitted to breaking into Ms. Horn's residence, admitted to stealing her purse, the gun, and the change jar, and also admitted to fleeing from the scene in his girlfriend's car.

In essence, unlike *Walker*, this was not a case where the sole evidence to establish Defendant's guilt was simply Ms. Horn's testimony. Based on the facts presented to it, the Court determined that expert testimony on the potential fallacy of eyewitness identification was not appropriate for this case, and denied Defendant's request. In reaching its decision the Court acted appropriately and within its discretion, and Defendant's claim of error is meritless.

16

Finally, Defendant's fourth claim of error is that this Court erred when, in response to the Commonwealth's Motion to Reconsider Sentence, it resentenced Defendant on Count 1, attempted murder, to a period of 20 to 40 years' incarceration.[89] Defendant alleges that the increase was motivated by judicial vindictiveness, undermined the integrity of Defendant's sentencing, and "violated Defendant's right to due process and the proscription against double jeopardy per the United States and Pennsylvania Constitutions."[90] This Court disagrees.

The trial court, as a matter of law, has discretion to modify its own sentence in response to a Commonwealth motion for reconsideration of sentence. *Commonwealth v. Robinson*, 931 A.2d 15, 24 (Pa.Super. 2007). However, any increase in sentence cannot be the result of judicial vindictiveness. *Commonwealth v. Lal*, 627 A.2d 281, 284-85 (Pa.Cmwlth. 1993). For example, a sentencing court may not resentence a defendant to a more severe sentence in order punish him for exercising his constitutional rights, or to chill the exercise of those rights.[91] *Commonwealth v. Speight*, 854 A.2d 450, 455 (Pa. 2004). No presumption of vindictiveness applies, however, where a trial court modifies its own sentence simply in response to a motion by the Commonwealth for reconsideration. *See Speight*, 854 A.2d at 455-56. Under that circumstance, the sentencing court is permitted to "reconsider exactly the same facts and circumstances of the case previously considered and conclude that they warrant a different [and more serious]

---

[89] Defendant Concise Statement at 3.

[90] Defendant Concise Statement at 3.

[91] This Court notes that *North Carolina v. Pearce*, 395 U.S. 711 (1969) and its related Pennsylvania case law regarding judicial vindictiveness are not applicable in this case. *Pearce* "applies specifically to sentences imposed following retrial after a prior conviction has been overturned on appeal because of error tainting the first trial." *Commonwealth v. DeCaro*, 444 A.2d 160, 162 (Pa.Super. 1982). Here, Defendant's increased sentence was based on the Commonwealth's Motion for Modification of Sentence where no presumption of vindictiveness applies, *see Commonwealth v. Speight*, 854 A.2d 450, 455-56 (Pa. 2004), and was motivated by this Court's desire to preserve its expressed intent to sentence Defendant to the maximum term of incarceration allowed by law, which would have occurred at Defendant's original sentencing hearing but for an overlooked error in the PSI Report relative to the appropriate statutory maximum for Count 1.

17

sentence." *Commonwealth v. Broadie*, 489 A.2d 218, 222 (Pa.Super. 1985). No change in circumstances is required to justify the increased sentence. *Id.* Indeed, the purpose in allowing both the Commonwealth and defense to file a motion to modify sentence is to "give the sentencing court an opportunity to reconsider the sentence and correct any mistakes that may have been made." *Commonwealth v. Anderson*, 450 A.2d 1011, 1014 (Pa.Super. 1982).

Additionally, increasing a defendant's sentence in response to a motion by the Commonwealth does not implicate a violation of the Double Jeopardy Clause. In Pennsylvania, "no sentence is final until the right to appellate review has been exhausted or waived. *Anderson*, 450 A.2d at 1013. Both the Commonwealth and the defense have a right to appellate review of a defendant's sentence. *Id.* If the Commonwealth elects to file a motion to modify sentence, their right to appellate review of a defendant's sentence is preserved, and a defendant loses any expectation of finality upon pronouncement of that sentence. *Commonwealth v. Postell*, 693 A.2d 612, 615 (Pa.Super. 1997). Moreover, the Supreme Court of the United States has noted that the "Double Jeopardy Clause does not require that a sentence be given a degree of finality [at the time of initial sentencing] that prevents later increase." *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980). The *DiFrancesco* Court further stated that "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Id.* at 135 (internal quotation omitted).

Our Superior Court has adopted the *DiFrancesco* Court's reasoning and held that the Double Jeopardy Clause does not preclude a trial court from increasing a defendant's sentence during resentencing. *See Commonwealth v. Gonzales*, 504 A.2d 886, 890 (Pa.Super. 1986). Our Superior Court has further held that the Double Jeopardy Clause is not violated when the trial court resentences a defendant to make the sentence "comport with the [court's] intention

18

expressed on the record." *Commonwealth v. Kunish*, 602 A.2d 849, 853 (Pa.Super. 1992). In *Kunish*, the defendant was originally sentenced to 3½ to 7 years' incarceration following his conviction for voluntary manslaughter. *Id.* at 849. On appeal, the case was remanded to the trial court for resentencing, and the trial court imposed a period of 2½ to 5 years' incarceration. *Id.* at 850. Shortly after the resentencing proceeding had concluded, the trial court recalled the defendant to the courtroom to resentence him, again; the court resentenced the defendant to the original 3½ to 7 years prison sentence. *Id.* The trial court explained that its intent was to "impose the same sentence" but the court, when announcing the sentence of the court on the record, "made a mistake in reading the years." *Id.* The Superior Court upheld the defendant's sentence, reasoning that it was "quite evident from the judge's statements [that] he clearly intended to impose the same sentence that he had originally imposed..." *Id.*

In this case, the record shows that that this Court increased Defendant's sentence based on the Commonwealth's motion to reconsider the sentence. The record also clearly demonstrates that modification of Defendant's sentence was not vindictive.[92] The court was not attempting to punish Defendant for freely exercising his legal rights. Instead, like the defendant in *Kunish*, the Defendant in this case was resentenced to correct an error and make Defendant's sentence comport with the intention this Court clearly expressed on the record at Defendant's original sentencing.

It is quite evident from this Court's statements at Defendant's original sentencing that it intended to impose the maximum sentence allowed by law on the attempted murder conviction due to the extremely heinous nature of Defendant's crimes. This Court stated adequate reasons

---

[92] This Court once again notes it had discretion to modify its sentence in response to the Commonwealth's Motion for Reconsideration without any presumption of vindictiveness applying. *See Commonwealth v. Speight*, 854 A.2d 450, 455-56 (Pa. 2004); *Commonwealth v. Robinson*,931 A.2d 15, 24 (Pa.Super. 2007).

19

for the sentence as a whole, extensively considering and discussing the defendant's presentence report, the defendant's criminal history, the facts of the case, and the defendant's failure to show remorse for his actions.[93] More specifically, the court noted that Defendant was an admitted drug dealer from at least the age of 17 and through the time of his arrest.[94] The court noted that Defendant was expelled from high school and had minimal legitimate employment, feeling that selling of drugs, both marijuana and cocaine, were much more valuable than doing legitimate work.[95] The court noted that Defendant had a continued history for fighting and assaultive behavior while incarcerated in Lancaster County Prison.[96] The court further noted that Defendant was given ample opportunity to change and rehabilitate his behavior through the juvenile court system with Lancaster Freedom Center, Manos house, and the city program; Defendant, instead, continued to engage in a life of crime and violence.[97] Moreover, this Court noted that a departure from the guidelines on certain charges was warranted for the following reasons:

> There was no plea agreement. There are multiple current convictions. The series of offenses are more serious and significant that usual. [Defendant] is a clear and present danger to society. [Defendant] shows no remorse whatsoever for more than an hour of clear torture.
>
> The [Defendant] severely injured the victim to the point of death. The [Defendant] is an admitted drug seller. His only life's occupation. The [Defendant] inflicted extreme mental and physical cruelty to the victim... The [Defendant] held the victim hostage for the purpose of torture and death. The victim's injuries were substantially in excess of the minimum necessary to prove these crimes. But for her desire and ability to live and survive, this would be a death penalty hearing.[98]

---

[93] Sentencing at 31-32.
[94] Sentencing at 28.
[95] Sentencing at 28.
[96] Sentencing at 28.
[97] Sentencing at 28.
[98] Sentencing at 28-29.

20

In sum, at Defendant's original sentencing, this Court gave all of the reasons why it intended to impose a maximum sentence on the attempted murder count, which the court believed to be 10 to 20 years' incarceration. However, that crime actually carried a 40-year maximum. As a result of this Court's error, and despite placing more than a dozen reasons on the record to support an aggravated sentence, Defendant's original sentence for attempted murder was actually at the very bottom of the standard range.

But for this Court's failure to recognize the appropriate statutory maximum sentence for attempted murder with serious bodily injury prior to announcing Defendant's sentence on that count, he would have been sentenced to a period of incarceration of not less than 20 nor more than 40 years. The Commonwealth filed a motion for reconsideration of sentence, and in response to that motion, this Court increased Defendant's sentence to correct an obvious mistake. No change in circumstances was required to justify the increase. No Due Process or Double Jeopardy violations occurred because Defendant lost any expectation of finality of sentence once the Commonwealth filed its motion. Neither the United States Constitution nor the Pennsylvania Constitution requires that sentencing should be a game in which a clear mistake by this Court means immunity for Defendant. Accordingly, the Court respectfully submits that Defendant's judgment of sentence should be affirmed and his appeal dismissed.

BY THE COURT:

HOWARD F. KNISELY
JUDGE

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

Jacquelyn E. Pfursich
Clerk of Courts

21

Copies to:
Todd M. Mosser, 1500 JFK Boulevard, Suite 1723, Philadelphia, PA 19102
Office of the District Attorney