548 A.2d 1230

**COMMONWEALTH of Pennsylvania**

v.

**Robert C. STEIN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 28, 1988.

Filed Sept. 15, 1988.
Petition for Allowance of Appeal Denied Feb. 23, 1989.

340

Joanne Kelhart, Bethlehem, for appellant.

Daniel G. Spengler, Assistant District Attorney, Bath, for Com., appellee.

Before CAVANAUGH, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

Robert Stein was tried by jury and was found guilty of kidnapping, attempted homicide, aggravated assault, robbery, and various lesser offenses committed upon the person of Nazir Ishak during the late evening of January 28 and the early morning of January 29, 1985. From the judgment of sentence thereafter imposed, Stein appeals. He argues that the trial court committed numerous trial errors and that the trial court also erred when, on motion of the Commonwealth, it reconsidered and imposed a second, more severe sentence. We find no merit in Stein's contentions and affirm the judgment of sentence.

The evidence established that on the evening of January 28, 1985, Tina Jezick, her husband, Michael, her sister-in-law, Michelle, and Stein devised a plan by which Tina and Michelle would pose as prostitutes in order to lure a man to their house, where Michael Jezick and Robert Stein would be waiting to rob him. Pursuant to this plan, Michelle was able to enter a vehicle driven by Nazir Ishak, after which she directed him to the Jezick home on Oak Street in the

City of Allentown. Tina, meanwhile, had alerted the male conspirators that Michelle and a man were on their way. When Ishak arrived at the Jezick home, he was frisked and taken at rifle point to the basement. There he was beaten by Michael Jezick and Robert Stein. The women remained upstairs but heard Ishak being beaten and pleading for help. Jezick and Stein removed Ishak's wallet and watch and then went for a ride in his car. While they were gone, Michelle went into the basement where she observed Ishak lying on a mattress. His hands and feet were bound, and he was bleeding from wounds to his head and hands. When Stein and Michael Jezick returned several hours later, they wrapped Ishak in a blanket, placed a pillow case over his head, and put him in the trunk of his car. Ishak was then driven into Northampton County, where the men intended to leave him. En route, when Ishak was heard to be groaning, the men stopped the car, opened the trunk and cut Ishak's throat. He was thereafter thrown into a fifteen foot deep, dry canal, where he was found approximately twelve hours later. Ishak survived.

Later the same morning, Jezick and Stein picked up Robin Burian and took her for a ride in Ishak's car. While she was with them, Jezick changed the license plate with that of another car. They also went to an automatic bank machine where Jezick unsuccessfully attempted to obtain cash by using a card found in Ishak's wallet. At this time, Jezick told Robin Burian that she was riding in a "dead man's car" and related to her the events of the prior evening and early morning hours.

Several days later, Jezick and Stein appeared at a welding shop and gas station where they attempted to sell tools which had been removed from the trunk of Ishak's car. The car was later abandoned in Allentown.

At trial, appellant denied that he had been involved in the kidnapping and assault of Ishak. He testified that on the early evening of January 28, he had visited Michael Jezick, had drunk a beer and smoked marijuana, and had departed. He said that he had fortuitously met Jezick several days

later while Jezick was driving Ishak's car. He went with Jezick, he said, when Jezick attempted to sell some tools that were in the trunk of the car. Jezick also testified as a defense witness and confirmed that Stein had not been involved in the beating of Ishak. However, his testimony was impeached by a prior inconsistent statement which he had made to police following his arrest. In that statement, he had implicated appellant in the several offenses committed against Ishak.

Appellant argues that the trial court erred when it denied a pre-trial motion for change of venue. Whether to grant a motion for change of venue is within the sound discretion of the trial court. *Commonwealth v. Cohen*, 489 Pa. 167, 178, 413 A.2d 1066, 1072 (1980); *Commonwealth v. Casper*, 481 Pa. 143, 150, 392 A.2d 287, 291 (1978). Ordinarily, to be successful on a motion for change of venue, a criminal defendant must demonstrate that pre-trial publicity resulted in actual prejudice in empaneling a jury. *Commonwealth v. Howard*, 358 Pa.Super. 259, 267, 517 A.2d 192, 195–196 (1986). "In some instances, however, 'there can be pre-trial publicity so sustained, so pervasive, so inflammatory, and so inculpatory as to demand a change of venue without putting on the defendant any burden of establishing a nexus between the publicity and actual jury prejudice.'" *Id.*, 358 Pa.Superior Ct. at 267, 517 A.2d at 196, quoting *Commonwealth v. Frazier*, 471 Pa. 121, 127, 369 A.2d 1224, 1227 (1977). To determine whether pre-trial publicity has been so pervasive as to relieve a defendant of the burden of proving actual prejudice, a trial court, in exercising its discretion, must consider:

"whether the pre-trial publicity was, on the one hand, factual and objective, or, on the other hand, consisted of sensational, inflammatory and 'slanted articles demanding conviction,' *United States v. Sawyers*, 423 F.2d 1335, 1343 (4th Cir.1970); whether the pre-trial publicity revealed the existence of the accused's prior criminal record; whether it referred to confessions, admissions or reenactments of the crime by the defendant; and whether

such information is the product of reports by the police and prosecutorial officers."

*Commonwealth v. Cohen, supra* 489 Pa. at 178, 413 A.2d at 1072, quoting *Commonwealth v. Casper, supra* 481 Pa. at 152–153, 392 A.2d at 292. Further, the court should consider the extent of saturation and whether there has been a sufficient "cooling-off period." *Id.*, 481 Pa. at 153–154, 392 A.2d at 292–293.

▌ The events involved in the instant case occurred in January, 1985. A first trial was held in January, 1986, but this trial ended in a mistrial when the jury became deadlocked.[1] A second trial began on September 8, 1986. All newspaper articles submitted to the court by appellant in support of his pre-trial motions to change venue[2] had appeared in local newspapers immediately following the crime. The latest article introduced during the pre-trial hearing had appeared approximately one month after the crime's commission. An examination of the newspaper articles discloses that they were objective and based on fact. Although one article referred to the fact that appellant had a prior criminal record, the extent thereof and the nature of the crimes committed were not revealed. Eighteen months elapsed between the incident and the second trial, and a six month period intervened between the first and second trials. The record discloses that although pre-trial publicity had

1. Appellant's argument that he should be discharged because his second trial violated principles of double jeopardy is lacking in merit. The law is clear that the discharge of a jury prior to rendering its verdict will not bar retrial if the discharge was based on manifest necessity. *Commonwealth v. Mehmeti*, 501 Pa. 589, 462 A.2d 657 (1983). A hopeless deadlock among the members of the jury which cannot be broken by further deliberations is deemed manifest necessity. *Id.* A court, sua sponte, may summon the jury and determine whether a deadlock exists. *Commonwealth v. Santiago*, 492 Pa. 297, 424 A.2d 870 (1981). Here, the jury deliberated for a total of about thirteen and a half hours over two days and told the court unequivocally that it was deadlocked. The trial court was justified in declaring a mistrial under these circumstances.

2. Appellant filed pre-trial motions to change venue before both the first and second trials. The news articles in evidence were submitted to the court at the hearing on the first motion. No further media reports were submitted to the court in support of the second motion.

occurred, it was not so pervasive that appellant was unable to receive a fair trial in the community in which the incident had occurred.  For appellant to have prevailed on his motion for change of venue, therefore, it was necessary that he show actual prejudice in empaneling the jury.

A review of the voir dire transcript discloses that no juror recognized appellant.  Although seven of the thirty-two jurors on the panel recalled reading about the incident, none had formed a fixed opinion regarding appellant's guilt or innocence.  Appellant has alleged nothing to suggest that any juror had a fixed bias as a result of pre-trial publicity, and the record does not disclose any such bias.  Thus, the pre-trial hearing court could properly conclude, as it did, that appellant had failed to sustain his burden of showing actual prejudice.

■ Appellant argues that several photographs depicting the victim's injuries were inflammatory and highly prejudicial and should not have been received.

> The question of admissibility of photographs ... is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error.  *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980); *Commonwealth v. Batty*, 482 Pa. 173, 393 A.2d 435 (1978).... Whether the photographs are admissible depend[s] on a two step analysis.  First, the court must decide whether a photograph is inflammatory in nature.  "If, but only if, the photograph is deemed to be inflammatory, the Court must then apply the balancing test ... i.e., is the photograph of 'such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.' " [Citations omitted.]  *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980).

*Commonwealth v. Buehl*, 510 Pa. 363, 392, 508 A.2d 1167, 1181–1182 (1986).

The eleven photographs to which appellant objected at trial depicted the victim immediately following the incident. Nine of the photographs were black and white and depicted

the victim in the hospital, with bandages on his head and a tube in his mouth. They also showed Ishak's head wounds and the wound of his throat. Two of the photos were in color, showing the victim's bandaged head, a tube emerging from his mouth, and the throat wound. One of the color photographs showed the throat wound being held open by someone's fingers. The Commonwealth argued that the color photographs were necessary so that the jury could distinguish the head wounds from shadows and from the victim's hair.

In order to prove the crime of attempted homicide, the Commonwealth was required to show an intent to kill the victim. Appellant's co-defendants had denied that there had been any intent to kill. Evidence of the extent of the victim's wounds, therefore, was relevant to prove intent. The trial court determined that the photographs were inflammatory in nature, but held that the photographs were essential to the Commonwealth and that their probative value, therefore, outweighed any danger that they might inflame the passions of the jury. We find no abuse of the trial court's discretion. Appellant will not be permitted to brutalize his victim and then keep the jury from learning exactly how brutal the assault was.

■ Michael Jezick testified as a defense witness and confirmed Stein's testimony that the two of them had been together only for a short time early in the evening, during which they had drunk a beer and had smoked marijuana before separating. He said that he had not seen Stein again for several days. On cross-examination, the Commonwealth confronted Jezick with a prior statement in which he had narrated the details of the assault and Stein's involvement therein. Appellant contends that this was error because, by using a statement referring to the details of the assault, the Commonwealth was able to cross-examine the witness regarding matters not included in his direct testimony.

There is no merit in this argument. Jezick's trial testimony that appellant had not been present at the time of the

assault was directly contradicted by the statement which he had earlier made to the police. Cross-examination regarding the prior inconsistent statement was clearly proper; it did not exceed the scope of direct examination.

During cross-examination, Jezick said that his prior statement to police had not been true and that he had retracted it. The prosecuting attorney, in an effort to show motive for the retraction, questioned Jezick about the fact that the retraction had occurred only after Stein had been transferred to the Northampton County Prison where Jezick was being held. Jezick was also asked about threats allegedly made against him by Stein. Appellant argues that the information that he had been incarcerated in another prison suggested that he had been convicted of prior criminal conduct. There is no merit in this argument. Appellant was being held in default of bail for the instant offenses, and there was no suggestion in this cross-examination of Michael Jezick that appellant had had a prior criminal record. The cross-examination, moreover, was proper. Evidence regarding threats made by a defendant against a witness is relevant and admissible when introduced for the purpose of explaining testimony which is inconsistent with an earlier, pre-trial statement. *Commonwealth v. Bryant*, 316 Pa.Super. 46, 462 A.2d 785 (1983).

Michelle Jezick testified as a Commonwealth witness. She was cross-examined by defense counsel about a statement which she had made during a period of hospitalization to the effect that when called to the District Attorney's office to prepare for trial she intended to "lie [her] ass off." To rehabilitate the witness by showing a prior consonant statement, the Commonwealth played a videotaped statement given by the witness to police a week after the incident. During the course of being interviewed by police and after having been asked where appellant lived at the time of the incident, the witness responded:

He has been staying at Michael Herman's, behind the laundromat on 8th and Liberty, across the alley, behind the laundromat. He has been staying at his house since

he got out of, well when he got out of jail he was staying at his aunt's. Then from his aunt's he started staying with Michael. That was a couple weeks ago. . . .

A copy of the transcript of the videotaped interview with the witness had been supplied to defense counsel prior to trial. Before the jury heard the above portion of the interview, however, the defense did not object thereto. After the jury had heard it, a defense objection was made, which the court sustained. The trial judge also offered to give curative instructions, but the defense refused the offer. Instead, the defense requested a mistrial. This the court denied. Appellant argues that this was error requiring a new trial. We disagree.

■ References by a Commonwealth witness to prior criminal activity on the part of a criminal defendant are generally impermissible. *Commonwealth v. Turner,* 454 Pa. 439, 442, 311 A.2d 899, 900 (1973); *Commonwealth v. Watson,* 355 Pa.Super. 160, 167, 512 A.2d 1261, 1265 (1986). The probative value of such evidence is outweighed by the risk that a jury will infer guilt based on a perception of the defendant's propensity for crime. *Commonwealth v. Allen,* 448 Pa. 177, 181–182, 292 A.2d 373, 375 (1972). However, not every passing reference to prior criminal behavior mandates a new trial. *Commonwealth v. Williams,* 470 Pa. 172, 368 A.2d 249 (1977). A mistrial is only warranted if the reference manifests prejudice to the defendant. *Commonwealth v. Nichols,* 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979).

Whether to grant a mistrial is a decision within the discretion of the trial judge who has had the benefit of being present and observing the effect of the improper evidence. His decision will not be disturbed on appeal absent a "flagrant abuse of discretion." *Commonwealth v. Hamm,* 325 Pa.Super. 401, 412, 473 A.2d 128, 133 (1984), quoting *Commonwealth v. Potts,* 314 Pa.Super. 256, 274, 460 A.2d 1127, 1136 (1983). In determining whether a reference to a defendant's prior criminal conduct requires a mistrial, the trial court must consider "the circumstances

under which the irrelevant evidence was given and its probable effect on the jury." *Commonwealth v. Richardson,* 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981), quoting *Saunders et al. v. Commonwealth,* 345 Pa. 423, 425, 29 A.2d 62, 63 (1942).

The videotaped statement in this case was lengthy, spanning more than twenty pages of transcript. The reference to appellant's getting out of jail was general. It did not refer to the commission of any specific crime or to any conviction therefor. There was only a single reference to the fact that appellant had been in jail, and this was not exploited by the Commonwealth. Although appellant knew or should have known that the reference was included in the videotaped interview—his counsel had a copy of a transcript thereof—he did not alert the trial judge to the objectionable portion. Moreover, when the trial court offered to give curative instructions, appellant rejected such instructions. Under these circumstances, the trial court did not abuse its discretion when it denied the motion for mistrial. See: *Commonwealth v. Thomas,* 361 Pa.Super. 1, 521 A.2d 442 (1987); *Commonwealth v. Maute,* 336 Pa.Super. 394, 485 A.2d 1138 (1984).

Robin Burian did not testify at the first trial. She was called by the Commonwealth as a rebuttal witness at the second trial. After having been cross-examined by the defense, the witness was shown and confirmed a typed police report containing an oral statement as follows:

> We drove back and that is when I found out I was in a dead man's car. Mike Jezick told me. He was really "scitz" a hit man was after him. He was on Meth. The man was in the trunk of the car and making noise. Stein said about the noise and Mike went out and opened the trunk and slit his throat. Robert Stein didn't know Mike was doing this. When Robert found out he got nervous.

Appellant argues that this was exculpatory and that a copy of the statement should have been made available to appel-

lant's counsel prior to trial. Because it was not disclosed prior to trial, he contends, he should be awarded a new trial.

■ First, we note that this statement was not exculpatory. " 'Exculpatory evidence' has been defined as 'evidence which [in]trinsically tends to establish defendant's innocence of the crimes charged, as differentiated from that which, although favorable, is merely collateral or impeaching.' " *Commonwealth v. Woodell,* 344 Pa.Super. 487, 490, 496 A.2d 1210, 1212 (1985), quoting *Commonwealth v. Gee,* 467 Pa. 123, 131, 354 A.2d 875, 878 (1976). In the instant case, the witness's statement placed appellant at the scene of the crime and did not contradict evidence of his involvement. Therefore, it was not exculpatory. Where one actor in a conspiracy commits a crime in furtherance of that conspiracy, all co-conspirators are chargeable with the same crime, *Commonwealth v. Ford,* 315 Pa.Super. 281, 288–289, 461 A.2d 1281, 1284–1285 (1983), citing *Commonwealth v. Vaughn,* 459 Pa. 35, 39–40, 326 A.2d 393, 395 (1974).

■ Moreover, and in any event, the identity of the witness had been known to appellant's trial counsel well in advance of the trial, and the police version of her statement was, in fact, produced at trial and read to the jury. The Supreme Court of Pennsylvania, in interpreting Pa.R. Crim.P. 305(B)(1)(a) and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), upon which the rule is based, has observed:

This is not a situation where the withheld information was discovered only after conviction, but one where the evidence became available to the defense during trial. Moreover, the defense had the opportunity to effectively present this evidence before the jury. Under these circumstances, we find no justification for granting a new trial. The rationale for doing so in *Brady* and [*United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ] was that the jury had convicted without the benefit of the non-disclosed testimony. Such a purpose would not be served in this case where the jury did

consider the evidence in question before reaching its verdict. We therefore hold that even if the evidence would be deemed to be exculpatory[,] where it is effectively presented at trial and the belated disclosure does not prejudice the defense, no due process violation has occurred.

*Commonwealth v. Murphy,* 493 Pa. 35, 45–46, 425 A.2d 352, 357 (1981) (footnote and citations omitted). Similarly in the instant case, appellant was not prejudiced by disclosure of this evidence at trial. The statement was provided to appellant prior to Burian's testimony at trial, and the entire statement was read to the jury during the Commonwealth's case-in-chief. Defense counsel had the opportunity to cross-examine the witness regarding the statement and could refer to any portion thereof on the defense side or during closing argument.

Finally, the evidence was cumulative. Other Commonwealth witnesses testified that Jezick had admitted having slashed the victim's throat. Because the statement was not exculpatory, and because no prejudice to appellant resulted from its use, appellant is not entitled to a new trial because of the Commonwealth's failure to produce the police version of the witness's statement prior to trial.

■ Appellant argues that the trial court erred when it denied two requested points for charge. The first was for a specific instruction regarding the effect on Michelle Jezick's credibility of her admitted use of drugs on the night of the incident. The court denied this point for charge because the substance thereof had been covered in the court's general instructions. The court had instructed the jury generally that in weighing the evidence, it should consider the witness's ability to perceive and recall the incidents to which she had testified. Because this instruction adequately covered the requested point, it was not error for the trial court to refuse to give additional instructions. See: *Commonwealth v. Alvin,* 357 Pa.Super. 509, 518–519, 516 A.2d

376, 381 (1986); *Commonwealth v. Sirbaugh*, 347 Pa.Super. 154, 170, 500 A.2d 453, 461 (1985).

The second alleged error pertains to a requested instruction that when a witness has given an inconsistent statement, it is the later testimony at trial which is controlling. The trial court refused this instruction because the prior statement of Michael Jezick, to whom the requested instruction referred, had been received only for purposes of impeaching his trial testimony and not as substantive evidence, and the jury had been instructed accordingly. This instruction was more favorable to appellant than he was entitled to receive. Both it and the instruction requested by appellant were erroneous statements of the law. See: *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). There is in this part of the trial court's jury instructions no basis for awarding a new trial.

■ Finally, appellant complains because the court, on motion of the Commonwealth, increased his sentence for robbery from seven and one-half (7½) years to fifteen (15) years in prison to not less than ten (10) years nor more than twenty (20) years in prison.[3] Pursuant to Pa.R.Crim.P. 1410, the Commonwealth may move to modify the sentence within ten days after imposition, and the court upon such motion may vacate a previously imposed sentence if it determines that the prior sentence was inappropriate. Modification of sentence by the court upon the Commonwealth's motion does not violate principles of double jeopardy. *Commonwealth v. Johnston*, 348 Pa.Super. 160, 501 A.2d 1119 (1985), *affirmed*, 515 Pa. 454, 530 A.2d 74 (1987); *Commonwealth v. Rainey*, 338 Pa.Super. 560, 488 A.2d 34 (1985). Here, the court determined, based on the circumstances of this case, that the first sentence was inappropriate and increased it. This it could properly do. We find no abuse of discretion.

Judgment of sentence affirmed.

3. Lesser sentences for the remaining offenses were ordered to be served concurrently.