J-S49022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WALTER MARK SMITH | |
| Appellant | No. 391 MDA 2018 |

Appeal from the Judgment of Sentence Entered February 5, 2018
In the Court of Common Pleas of Adams County
Criminal Division at No.: CP-01-CR-0000823-2016

BEFORE:  SHOGAN, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 27, 2018**

Appellant Walter Mark Smith appeals from the February 5, 2018 judgment of sentence entered in the Court of Common Pleas of Adams County ("trial court"), following his jury convictions for first-degree and third-degree murder.[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.[2]  On the night of Friday June 3, 2016, into the early morning hours of Saturday June 4, 2016, Appellant and Mitchell Jones (the "victim") were on an alcohol and crack cocaine binge, spending hours drinking and smoking crack cocaine together.  By the early morning hours the victim ended up at Appellant's

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a), (c).

[2] Unless otherwise noted, these facts are taken from the trial court's April 26, 2018 opinion.  *See* Trial Court's Opinion, 4/26/18, at 2-4.

residence on Chapel Road in Adams County, which is the location where the victim was later found deceased in Appellant's upstairs bedroom. At some point, the two got into an altercation during which Appellant, a physically imposing person, beat the much more diminutive victim to death with his bare hands. Sometime after the beating, as the victim was lying in a pool of blood on the bedroom floor, Appellant covered the victim's head and part of his upper torso with a large black trash bag. According to Appellant, he went to sleep and woke up the next morning to find the victim dead on his bedroom floor.

Later in the day on June 4, 2016, after some futile attempts to clean up evidence, including placing blood-soaked items in a washing machine, Appellant drove the victim's pickup truck to visit friends and advised them that he had gotten into a fight with the victim after a night of "partying together." Appellant told these witnesses that the victim hit him with a chair and knocked him down so in response Appellant "beat him to death" and that when he woke up the victim was stiff. Appellant's right hand was swollen during this conversation. Appellant told his friends he was going away for a long time and came to say goodbye.

After Appellant left, the witnesses, believing the victim could be hurt inside Appellant's residence, drove to Appellant's residence, entered through a backdoor, observed broken items in the house and eventually discovered the victim dead in Appellant's bedroom. One witness testified he knew it was bad as he approached the steps because a strong scent of blood was detected.

On Saturday, June 4, 2016, at approximately 9:30 p.m., the Conewago Township Police Department was dispatched to Appellant's residence, based on a report that an individual had gone to the residence and discovered the victim's dead body. Upon arrival, police officers observed evidence of a struggle and broken items inside the residence and in an upstairs bedroom discovered the victim deceased, lying on the floor. The officers noted a large amount of blood loss and obvious signs of a struggle inside the bedroom, including a bloody handprint sliding down the bedroom wall. In addition, the victim had a black trash bag covering his head and a portion of his upper torso. Specifically, the victim was found with a pool of blood under his head with a badly beaten face, injuries to his upper arms and blood smears throughout Appellant's bedroom, including on the walls, on a recliner chair and on items within the disheveled room. Blood was also found on various items in Appellant's bathroom located down the hall from the bedroom.

Appellant eventually was arrested and charged with first and third-degree murder. On November 20, 2017, Appellant filed a pretrial motion *in limine*, objecting to the admission by the Commonwealth of various photographs depicting the crime scene and the victim's deceased body. In particular, Appellant alleged that the photographs at issue were "either cumulative, inflammatory or not essential to the Commonwealth's case." Appellant's Motion, 11/20/17, at ¶ 4. Following a hearing, the trial court ordered as follows:

1. Color autopsy photographs identified as numbers 55, 56, 014 and 016 are admissible as there is no longer any objection being pursued by Defense.

2. Color autopsy photographs 145 and 146 are admissible provided that the photographs are cropped to the general area of the eyes only.

3. As [Appellant's] objection to the admissibility of autopsy photographs of the Hyoid Bone, specifically photographs 113, 114, 117, 119 and 120, it is hereby ordered that the motion is granted in part. The Commonwealth may introduce one of that series of photographs in color to further illustrate the testimony of its expert witnesses with regard to the hemorrhaging and Hyoid Bone fracture. The photograph may be introduced in color and presented via projection on the screen. The remaining photographs in that series are precluded as cumulative.

4. [Appellant's] objection to autopsy photographs of [Appellant's] hand, identified as photograph number 017 is denied. The Commonwealth may introduce that photograph in color and by projection on the screen.

5. As [Appellant] indicated during oral argument that he no longer has objection thereto the crime scene photograph identified as number 134 is admissible in color and may be displayed on the projection screen.

6. [Appellant's] motion to preclude the autopsy photograph identified as number 008 is denied. As the photo demonstrates significant bleeding and the swelling to the left side of the victim's face and considering the fact [Appellant] is right-handed, the [trial court] finds the photograph fairly depicts the injuries sustained by the victim. The amount and presence of blood on the victim does not render this photograph inflammatory. The photograph may be briefly displayed on the projection screen at pertinent times during the Commonwealth's expert's pathologist's testimony.

7. [Appellant's] objection to the crime scene photographs numbers 142, 160 and 159 is denied. The photographs fairly depict the victim at the crime scene. These photographs are necessary to show the appropriate detail of alleged hemorrhaging and injuries to the victim's left and right arms. The [trial court] specifically finds that the black and white photographs do not provide enough clarity or detail to adequately illustrate the condition of the victim's arms. The photographs are not cumulative. They may be displayed on the screen in color.

8. Photograph number 158 is also admissible to show the condition of the victim's head at the crime scene after the removal of the trash bag covering from his upper torso and head.

Trial Court Order, 12/5/17, ¶¶ 1-8. The case ultimately proceeded to a jury trial, where, as the trial court noted, the Commonwealth

> introduced 83 different photographs. The vast majority of the photographs were benign. The photographs included aerial views of the home where the murder occurred, the crime scene, Appellant following his arrest, the path taken by the witnesses and officers as they entered the home and discovered the [victim's] body in the upstairs bedroom, the washing machine with wet bedding inside depicting Appellant's attempt to clean evidence of the murder, downstairs living room couches, a hallway view up the stairs, a chair and bucket sitting outside of the bedroom, the bathroom taken from the hallway and other photographs from inside of Appellant's house.

Trial Court Opinion, 4/26/18, 4-5. At trial, Appellant raised a claim of self-defense, claiming that the victim attacked him with a screwdriver. He also argued that he lacked the requisite specific intent to kill to sustain a conviction for murder in the first degree. Nonetheless, following a three-day trial, the jury, on December 7, 2017, found Appellant guilty of murder in the first and third degrees. On February 5, 2018, the trial court sentenced Appellant to a term of life imprisonment without the possibility of parole. Appellant did not file any post-sentence motions. Appellant timely appealed to this Court. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. After a considerable delay, Appellant complied, raising a single issue:

> [T]he [trial] court committed an error of law and abuse of discretion in permitting the Commonwealth to admit into evidence the photographs used in Appellant's trial without modification. Said photographs were unduly prejudicial in that, *inter alia*, they were unnecessary and unduly inflamed the passions of the jury to the extent that the jury was unable to reflect on the evidence in an objective manner.

Rule 1925(b) Statement, 4/10/18. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that Appellant has waived his assertion of error. Specifically, the trial court noted that Appellant "has failed to articulate which photographs he finds were erroneously admitted into evidence. In addition, Appellant fails to specify how the photographs were unfairly prejudicial or inflammatory." Trial Court Opinion, 4/28/18, at 2. The trial court, nonetheless, reasoned that, even if Appellant did not waive the issue, he still is not entitled to relief because the photographs were not inflammatory.

On appeal, Appellant presents the following issue for our review: "[w]hether the trial court's admission of color photographs, depicting autopsy and crime scene was [in] error and an abuse of discretion, when the photos were inflammatory and possessed no essential evidentiary value to the case." Appellant's Brief at 5. At the outset, we note that Appellant failed to preserve his argument that the photographs in question possessed no "essential evidentiary value," because he did not raise this argument before the trial court. *See* Pa.R.A.P. 1925(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[3]

Our standard of review is well-settled: "The admissibility of photos of the corpse in a homicide case is a matter within the discretion of the trial

---

[3] Similarly, insofar as Appellant challenges the manner in which the Commonwealth displayed the photographs to the jury, such challenge also is waived. *See* Pa.R.A.P. 302(a).

- 6 -

court, and only an abuse of discretion will constitute reversible error." *Commonwealth v. Wright*, 961 A.2d 119, 138 (Pa. 2008) (citations omitted). An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Commonwealth v. Davido*, 106 A.3d 611, 645 (Pa. 2014).

We now turn our attention to Appellant's argument that the color photographs in question, which he identified as photograph numbers 8, 142, 158, 159, 160, are inflammatory.[4]

When the Commonwealth seeks to introduce into evidence photographs of a victim's injuries, the trial court must engage in a two-part analysis. First, the court must decide if the photograph is inflammatory. *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015). If not, the photograph is admissible if it is relevant and can assist the jury's understanding of the facts. *Id.* If, however, it is inflammatory, the trial court must decide whether or not the photograph is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Id.* For a photograph to be deemed inflammatory, "the depiction must be of such a gruesome nature or be cast in such unfair light that it would tend to

---

[4] As the trial court pointed out, photograph number 8, 142, 158, 159, and 160 correspond to Commonwealth's trial exhibits number 97, 61, 62, 63, and 64, respectively.

cloud an objective assessment of the guilt or innocence of the appellant." **Commonwealth v. Dotter**, 589 A.2d 726, 729 (Pa. Super. 1991), **appeal denied**, 607 A.2d 249 (Pa. 1992). The visibility of blood in a photograph, however, does not necessarily require a finding that the photograph is inflammatory. **Commonwealth v. Crawely**, 526 A.2d 334, 341 (Pa. 1987).

In **Woodard**, the appellant was sentenced to death in connection with the murder of a two-year-old boy. On appeal to the Supreme Court, the appellant argued, *inter alia*, that the trial court had abused its discretion in permitting the Commonwealth to admit into evidence thirteen autopsy photographs of the boy, twelve of which were in color. The Court, upon review, held that the trial court acted within its discretion when it concluded that the images depicted were not inflammatory. The Court reasoned that "the twelve challenged color photographs portrayed various parts of [the boy's] body and illustrated the nature and extent of his injuries, which would have not been readily detectable in a black and white photo." **Woodard**, 129 A.3d at 494-95. Moreover, the Court noted that the single black and white photo depicted an internal injury, *i.e.*, the boy's lacerated liver. The jury in **Woodard** was not given the photographs to examine during deliberations, but viewed them in connection with the Commonwealth's expert's testimony explaining the findings of the autopsy report. **Id.** at 495.

The Court in **Woodard** further noted that even if the photographs were inflammatory, "we conclude, without hesitation, that they were highly probative as they related directly to the requisite elements of first degree

- 8 -

murder, *i.e.*, that [the boy] was unlawfully killed, as opposed to having drowned by accident, and that [the a]ppellant possessed the specific intent to kill." ***Id.*** Finally, the Court rejected the appellant's contention that the photographs constituted cumulative evidence because the Commonwealth's expert testified to the nature of the boy's injuries and the cause of his death. In so doing, the Court pointed that the "[t]he mere fact that a medical examiner testified to the nature of the victim's injuries and the cause of death does not render the photographs of the victim duplicative." ***Id.*** citing (***Commonwealth v. Watkins***, 108 A.3d 692, 724 (Pa. 2014); ***Commonwealth v. Pruitt***, 951 A.2d 307, 319 (Pa. 2008) (holding that photographic evidence of the victim's injuries is not rendered duplicative merely because a medical examiner or other comparable expert witness has conveyed to the jury, in appropriate clinical language, the nature of the victim's injuries and the cause of death). Indeed, the presentation of testimony as to a person's injuries "does not render photographs *per se* inadmissible." ***Commonwealth v. Johnson***, 42 A.3d 1017, 1034 (Pa. 2012) (citations omitted).

Instantly, even though the Commonwealth and trial court urge us to find Appellant's sole evidentiary issue waived, because he fails to offer any specific indication as to how the color photographs could have potentially inflamed the jurors' passions, we decline to find waiver. After careful review of the record and the relevant case law, we conclude that that the trial court accurately and thoroughly addressed the merits of Appellant's claim. ***See*** Trial Court Opinion,

4/26/18, at 6-13. We, therefore, hold that the trial court did not abuse its discretion in denying Appellant's motion *in limine* and permitting the Commonwealth to introduce the color photographs of the victim, depicting the crime scene and autopsy. ***See Woodard***, ***supra***; ***see also Commonwealth v. King***, 721 A.2d 763, 772-73 (Pa. 1998) (holding that the trial court did not abuse its discretion in admitting photograph depicting the manner in which the victim was tied and which showed graphic signs of the body's decomposition, including blackening of hands and secretion of bodily fluids); ***Commonwealth v. Stein***, 548 A.2d 1230, 1234 (Pa. Super. 1988) (noting that a defendant "will not be permitted to brutalize his victim and then keep the jury from learning exactly how brutal the assault was."), ***appeal denied***, 557 A.2d 723 (Pa. 1989). Accordingly, we affirm the trial court's February 5, 2018 judgment of sentence order. We further direct that a copy of the trial court's opinion dated April 26, 2018 be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2018

- 10 -



IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA   CP-01-CR-823-2016

VS.

WALTER MARK SMITH

### SUPPLEMENTAL OPINION PURSUANT TO Pa. R.A.P. 1925(a)

Previously on March 29, 2018 this Court entered a short one paragraph Opinion pursuant to Pa R.A.P. 1925(a) in which it was noted that Appellant failed to file a Concise Statement of Matters Complained of by the Court ordered deadline of March 23, 2018 and requesting that the Appellate Court deem all issues waived.

On April 10, 2018, some eighteen (18) days after the filing deadline, Defense Counsel filed a Concise Statement of Errors Complained on Appeal. In that statement Appellate raises one issue for review. Specifically, a generic allegation that the trial court committed an error of law and abuse of discretion in permitting the Commonwealth to admit into evidence photographs used in Appellant's trial without modification. Appellant suggests the photographs were unduly prejudicial and that they were unnecessary and unduly inflamed the passions of the jury.

In **Commonwealth v. Wright**, 961 A.2d 119 (Pa. 2008), our Supreme Court rejected Defendant's argument that photographs of the decedent's body were inflammatory, had no overwhelming evidentiary value and were cumulative of other evidence. The **Wright** Court found that appellant failed to specify how

1

*Distribution on last page*

SCANNED

they were inflammatory, why they lacked evidentiary value, or what other evidence they duplicated. Appellant merely restated the standards, in hopes the Court would formulate arguments on his behalf. The same situation presents itself instantly.

Indeed, at this point Appellant has failed to articulate which photographs he finds were erroneously admitted into evidence. In addition, Appellant fails to specify how the photographs were unfairly prejudicial or inflammatory.

Even if the Superior Court determines that Appellant has not waived the issue due to the failure to file a Concise Statement of Errors Complained of in a timely manner, the following is offered in support of decisions of the Trial Court to admit a few, but not nearly all, of the Commonwealth's proffered photographs. It is respectfully requested that this Court's judgment of sentence be affirmed.

On Saturday, June 4, 2016, at approximately 9:30 p.m., the Conewago Township Police Department was dispatched to a residence on Chapel Road in Conewago Township, Adams County, based on a report that an individual had gone to the residence and there discovered the body of Mitchell Jones, deceased. Upon arrival police officers observed evidence of a struggle and broken items inside the residence and in an upstairs bedroom discovered Mitchell Jones, deceased, lying on the floor. The officers noted a large amount of blood loss and obvious signs of a struggle inside the bedroom, including a bloody handprint sliding down the bedroom wall. In addition, Mitchell Jones had a black trash bag covering his head and a portion of his upper torso.

2

The evidence at trial revealed that Appellant and Mitchell Jones were lifelong friends. On the night of Friday June 3, 2016, into the early morning hours of Saturday June 4, 2016, Appellant and Mitchell Jones were on an alcohol and crack cocaine binge, spending hours drinking and smoking crack cocaine together. By the early morning hours Mitchell Jones ended up at the Appellant's residence on Chapel Road in Adams County, which is the location where Mitchell Jones was later found deceased in Appellant's upstairs bedroom. At some point, the parties got into an altercation during which the Appellant, a physically imposing person, beat the much more diminutive Mitchell Jones to death with his bare hands.

At trial, Appellant raised a claim of self-defense arguing that Mitchell Jones attacked him with a screwdriver which necessitated Appellant defending himself to the degree that he beat Mitchell Jones to death in the upstairs bedroom.[1] The beating was brutal and savage. Sometime after the beating, as Mitchell Jones was lying in a pool of blood on the bedroom floor, Appellant covered Mitchell Jones' head and part of his upper torso with a large black trash bag. According to Appellant he went to sleep and awoke the next morning to find his friend, Mitchell Jones, dead on his bedroom floor. At the crime scene Decedent was found with a pool of blood under his head with a badly beaten face, injuries to his upper arms and blood smears throughout Appellant's bedroom, including on the walls, on a recliner chair and on items within the disheveled room. Blood was also found on various items in Appellant's bathroom located down the hall from the bedroom.

---

[1] On June 4, 2016 Appellant originally told other friends Mitchell Jones attacked him with a chair.

3

Later in the day on June 4, 2016 after some futile attempts to clean up evidence, including placing blood soaked items in a clothes washer, Appellant drove Mitchell Jones pickup truck to visit friends and advised that he had gotten into a fight with Mitchell Jones after a night of "partying together." Appellant told these witnesses that Mitchell Jones hit him with a chair and knocked him down so in response Appellant "beat him to death" and that when he woke up Mitchell was stiff. Appellant's right hand was swollen during this conversation. Appellant told his friends he was going away for a long time and came to say goodbye.

After Appellant left, the witnesses, believing Mitchell Jones could be hurt inside Appellant's residence, drove to Appellant's residence, entered through a backdoor, observed broken items in the house and eventually discovered Mitchell Jones dead in Appellant's bedroom. One witness testified he knew it was bad as he approached the steps because a strong scent of blood was detected.

At trial the defense raised a claim of self-defense as well as the defense that Appellant lacked the requisite specific intent to kill necessary to sustain a conviction for murder in the first degree. Following a three (3) day jury trial, the jury returned verdicts of guilty on Count 1, Murder of the First Degree and Count 2, Murder of the Third Degree. The verdict was rendered on December 7, 2017. On February 5, 2018 this Court sentenced Appellant to a mandatory term of life in prison without any possibility of parole.

At trial the Commonwealth introduced 83 different photographs. The vast majority of the photographs were benign. The photographs included aerial views

4

of the home where the murder occurred, the crime scene, Appellant following his arrest, the path taken by the witnesses and officers as they entered the home and discovered the body of Mitchell Jones in the upstairs bedroom, the washing machine with wet bedding inside depicting Appellant's attempt to clean evidence of the murder, downstairs living room couches, a hallway view up the stairs, a chair and bucket sitting outside of the bedroom, the bathroom taken from the hallway and other photographs from inside of Appellant's home. From the tardy Concise Statement of Errors Complained of this Court can still not decipher which trial exhibits Appellant suggests where unduly prejudicial as being unnecessary and inflammatory.

This Court is left to surmise that Appellants unspecified complaints pertain to the few autopsy and crime scene photos showing decedent's body. Prior to trial Appellant filed a Motion in Limine seeking to preclude the Commonwealth from admitting into evidence various autopsy photographs and crime scene photographs depicting the Decedent. This Court held a hearing on Appellant's Motion in Limine at which time Appellant, through counsel, withdrew the objections to many of the photographs contained within Appellant's motion. This Court made a careful review of all photographs to which Appellant was objecting. On December 4, 2017, after much deliberation, this Court entered an Order addressing each of the remaining photographs identified in Appellant's Motion in Limine. The general basis for this Court's ruling is set forth in that Order of Court as the specific photographs are discussed.

5

The admissibility of photos of the corpse in a homicide case is a matter within the discretion of the trial court, and only an abuse of discretion will constitute reversible error. **Commonwealth v. McCutchen**, 454 A.2d 547, 549 (Pa. 1982).

As noted repeatedly by the Pennsylvania Supreme Court

> a criminal homicide trial is, by its very nature, unpleasant, and the photographic images of the injuries inflicted are merely consonant with the brutality of the subject of inquiry. To permit the disturbing nature of the images of the victim to rule the question of admissibility would result in the exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt.

**Commonwealth v. Jacobs**, 639 A.2d 786, 788-789 (Pa. 1994) (citing, **McCutchen**, 554 A.2d at 549.

Further, the condition of the victim's body provides evidence of the assailant's intent, and, even where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs. **Jacobs**, 639 A.2d at 789. *See also*, **Commonwealth v. Rush**, 646 A.2d 557 (Pa. 1994).

Further, neither graphic testimony nor the pictures gruesome nature precludes admissibility of photographs of a homicide scene. See, e.g., **Commonwealth v. Marinelli**, 690 A.2d 203, 217 (Pa. 1997). ("while the presence of blood on the victim depicted in the photographs is unpleasant, it is not in and of itself inflammatory."); **Commonwealth v. Gorby**, 588 A.2d 902, 908

6

(Pa. 1991) (no abuse of discretion in allowing photographs "which depicted a large gaping gash on the victim's neck as well as thirteen other knife wounds located on the victim's hands, arms, back, and chest"); **Commonwealth v. Chester**, 587 A.2d 1367, 1373-74 (Pa. 1991) (no abuse of discretion in allowing photographs of the victim's slashed throat, open eye, and other head injuries as evidence of specific intent to kill).

Yet another case supports the decision of the Court in allowing a few of the multitude of crime scene photographs to come into evidence in this case. In **Commonwealth v. Edwards**, 555 A2d 818 (Pa. 1989), thirteen photographs were admitted of the victim's body which depicted her beaten face, the strangulation area of her neck, wounds on her hands and fingers, bite marks on her legs and explicit photographs of her chest and abdomen related to the sexual nature of the attack. Our Supreme Court concluded that "the photographs admitted were not inflammatory and were relevant in aiding the jury to understand the events of the crime charged." **Edwards**, 555 A.2d 188.

In a homicide trial it is difficult to imagine a case where the Commonwealth would not be permitted to introduce photographic evidence of the condition of the victim's body considering its need to prove Defendant's specific intent and the circumstances surrounding the crime. In this case the photographs admitted were limited to a few of the many the Commonwealth requested, were relevant to issues for the jury's determination and were not prejudicial. Throughout trial the Court took every effort to make sure that the presentation of the photographs to the jurors was minimal in number and

7

duration of display and prevented further undo focus on the photographs by not allowing any of the photographs to go out with the jury during their deliberations.

This Court carefully exercised the discretion afforded to it to limit the number and types of photographs shown to the jury so as to minimize any possibility of unfair prejudice to Appellant. For example, the Defense objected to five (5) autopsy photographs of Decedent's hyoid bone. The Commonwealth sought to introduce all five (5) of those photographs arguing that they show the fractures to the Decedent's hyoid bone from different angles. The Commonwealth argued that the photographs illustrate the testimony of the Commonwealth's expert witness with regard to the hemorrhaging and hyoid bone fracture, and the significance of those injuries. To limit the inundation of graphic images to the jury and to prevent introduction of cumulative evidence, this Court allowed the Commonwealth to introduce only one (1) out of the series of five (5) photographs. An autopsy photograph of decedent's blood covered hand was also admitted. (Com. Ex. 100). That picture was relevant to show the amount of blood on decedent's hand relative to the items Appellant alleges were weapons brandished against him (screwdriver or chair), as well as decedents true condition following the beating. The picture shows just how brutal the beating was. The Court also allowed introduction of an additional autopsy photograph to demonstrate the significant bleeding and swelling to the left side of the victim's face. (Com. Ex. 97). The photograph was relevant considering the fact that the Appellant was alleged to have beaten Decedent to death with his bare hands and the fact that Appellant is right handed. The injuries Mitchell Jones sustained to

8

the left side of his face are consistent with being struck by a right handed person. The Court further found that the photograph fairly depicted the injuries sustained by the decedent at the hands of Appellant. Also admitted were close up autopsy photographs of decedent's eyes to illustrate the petechial hemorrhaging. (Com. Ex. 104 and 105). Autopsy photos of the inside of decedent's lips were also admitted to show injuries and one source of significant bleeding. (Com. Ex. 101 and 102). Those photographs were allowed to be used at pertinent times during the Commonwealth's presentation of its expert pathologist at trial.

Finally, the Court admitted a total of five (5) color copies of crime scene photographs showing decedent, out of the dozens of photographs the Commonwealth requested, to which Appellant objected to four (4).[2] The Court found that the photographs were necessary to show in appropriate detail the hemorrhaging and injuries to the decedent's left and right arms. (Com. Ex. 61, 62, and 64). This Court specifically found that black and white copies provided to the Court for consideration did not provide enough clarity or detail to illustrate the condition of the decedent's arms. The Court also allowed the introduction of one wide-angle photograph of the bedroom showing the decedent on the floor as police discovered him.[3] Finally, the Court allowed the admission of a photograph to show the condition of the decedent's head at the crime scene following the removal of the trash bag that was covering his upper torso and head. (Com. Ex.

---

[2] The crime scene photographs to which Appellant objected in his Motion in Limine correlate to trial exhibits 61, 62, 63, and 64.
[3] Appellant withdrew his objection to this photograph (trial exhibit 60, scene #134) during argument on the Appellant's Motion in Limine.

9

63). The Court found the photographs to not be cumulative and briefly allowed their display to the jury.

Importantly, this Court granted Appellant's Motion in Limine with regard to all remaining photographs as set forth in Appellant's Motion, finding the photographs to be cumulative and lacking in any independent evidentiary value when considering the potentially inflammatory nature of those additional photographs. This Court took great care to limit the number and the nature and the type of photographs which the Commonwealth was allowed to introduce in order to minimize and reduce any prejudicial and inflammatory effect they might have on the jury.

As noted at trial, Appellant's defense was one of self-defense and the lack of requisite specific intent. The photographs that were admitted were relevant to show the utter brutality of the beating Appellant inflicted upon Mitchell Jones with Appellant's bare hands. They were relevant to show it was not one or two punches delivered to disarm an alleged attacker, but depicted a massive amount of bleeding and hemorrhaging sustained by the decedent. They were relevant to show that the struggle and the attack was not in an isolated location where the parties stood but extended throughout Appellant's bedroom.

Furthermore, at trial Appellant, through experts, argued that Mitchell Jones did not die from the beating inflicted by Appellant, but rather Appellant only inflicted superficial injuries which due to the decedent's level of cocaine intoxication allowed for the hemorrhaging and excessive bleeding. Therefore, it was Appellant himself who placed the amount of blood and the nature of

10

bleeding into issue in furtherance of his defense. The photographs were relevant to show the location, source, and amount of bleeding.

To the extent Appellant argues that the photographs would have been more appropriately admitted in black and white this Court carefully reviewed the proffered black and white photographs and determined that due to the amount of debris and clutter throughout Appellant's bedroom and the fact that there was a black trash bag covering decedent's head, decedent was wearing a black sleeveless t-shirt and found lying next to what appears to be a black circular object with dark colored magazine clippings and photographs on the floor under and around decedent, the black and white photographs did not provide sufficient detail or contrast as to what was blood evidence versus what was clutter and other items within the room.

In addition, in order to prove Appellant's intent the Commonwealth proffered evidence that there was a significant amount of decedent's blood found inside of the black trash bag suggesting that the bag was placed over the decedent's head and upper torso while he was still alive. The black and white photographs would not accurately depict the relationship between the dark congealed blood and the black trash bag in a manner to allow for the jurors understanding and comprehension of evidence as to whether a bag was placed over decedent following his death as Appellant suggested or prior to death as the Commonwealth alleged. With respect to photographs of decedent's arms, the Commonwealth sought to introduce evidence of hemorrhaging, bruising and bleeding under decedent's skin. Again, due to the amount of clutter, debris and

11

other dark objects found close in proximity to decedent's body the black and white photographs didn't sufficiently show whether the marks in the photograph were dirt and debris or hemorrhaging as the Commonwealth alleged. The color photographs were necessary to provide sufficient detail to allow the Commonwealth to present arguments in furtherance of satisfying its burden of proof.

It is noted that all of the appellate authority cited in this opinion was handed down more than 20 years ago. Sadly, it is this Court's belief that today's society has become considerably more desensitized to graphic images then at previous times. The advent of the internet plus a 24 hour news cycle, coupled with the content of popular movies and shows on cable television, all of which are streamed in color images, often in video, have raised the threshold of what might be required to render photographic or video evidence inflammatory.

During trial the Court carefully watched the jurors as images were presented to them and this Court observed no outward expression of emotion or any visceral effect from viewing a few photographs of the Decedent at the crime scene and autopsy pictures. The jurors relatively limited exposure in terms of the number of photographs and the duration of viewing of the photographs, helped provide a full picture of the brutality of the beating and the circumstances of the crime helping the jurors ascertain Appellant's true intent. The Court observed no signs that the photographs inflamed the jury to the point that the photographs were unfairly prejudicial.

12

Accordingly, it is respectfully requested that judgment of sentence be affirmed.


BY THE COURT:


_____
**THOMAS R. CAMPBELL**
**Judge**


Date filed: April 26, 2018


4-27-18
@
8:09am

**COPIES**

1-Original
1-Court Administrator -electronic
1-Brian R. Sinnett, Esquire -electronic
1-Anthony E. Miley, Esquire -email
1-Adams County Legal Journal-electronic
1-District & County Reports-email
1-media copy - copc

13