J-S72036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID WILLIAM SLEETS, | : | |
| | : | |
| Appellant. | : | No. 1047 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 21, 2018,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0000073-2015.

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:              **FILED MARCH 05, 2019**

David Sleets appeals from the judgment of sentence after a jury found him guilty of criminal attempt (homicide), aggravated assault, two counts of kidnapping, and one count of endangering the welfare of children.[1]  After careful review, we affirm.

The trial court summarized the relevant facts in part as follows:

> Johnnette Hill ("Hill") testified at trial that [Sleets], whom she had dated for thirteen years, was the father to her four children. The youngest child, Jahniyah Sleets ("victim"), was three-years-old at the time of trial. After the victim was born, [Sleets] and Hill broke up, at which time Hill moved back into her mother's home with the children because her relationship with [Sleets] was "terrible."  Two days before this incident, Hill had called the police to report that [Sleets]

---

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 2901(a.1)(2), 2901(a.1)(3), and 4304(a), respectively.

jumped in her face and said, "I'll kill my own." Hill took that to mean [Sleets] was referring to his own children.

In the early morning hours of November 11, 2014, after working a 3:00 p.m. to 11:30 p.m. shift, Hill arrived home and saw her mother on a couch with the victim. [Sleets] was also in the home, seated at a computer. When her mother went to bed, Hill sat down on the couch and fell asleep with the victim in her arms.

Hill was awakened when she felt [Sleets] taking the victim out of her arms. Hill headed towards the kitchen, saw [Sleets] hovering over a bag, and heard the muffled cries of the victim coming from the bag. When Hill yelled for [Sleets] to give her the baby, [Sleets] ran out the back door with the bag and Hill gave chase.

After chasing [Sleets] through an alleyway and cornering him in the Lancaster garage, Hill saw [Sleets] throw the bag under a van and run away. Hill opened the bag and pulled the victim out of the bag. The victim was "stiff as a board" and was covered in blood. Hill then exited the parking garage and ran with the victim a short distance to Lancaster General Hospital ("LGH").

Trial Court Opinion, 8/28/18, at 2-3 (citations omitted).

Sleets was apprehended and charged with the above offenses. On March 13, 2018, Sleets filed a motion in limine to exclude two color photographs depicting the victim with a severe laceration to the left side of her face. Officer Paul Blanchflower took the photographs of the victim on the night of the incident in the trauma bay of Lancaster General Hospital. At the beginning of the jury trial, on March 26, 2018, the court denied the motion in limine, and allowed the photographs to be admitted.

During trial, three medical doctors testified as to the victim's injuries. Dr. Brett Levy, an emergency department physician at Lancaster General

Hospital, testified that the victim had "a fairly long, deep laceration that went roughly from the base of the skull in the left posterior, from what I can recall, and it came around towards the front of her neck." N.T. at 286-87. Additionally, Dr. Levy noted that the victim was in shock because of trauma and blood loss.

Dr. Brett Engbrecht, a pediatric surgeon at Penn State Children's Hospital, operated on the victim after she was flown from Lancaster General Hospital to Hershey. During trial, he testified that the cut on the victim went under her jaw and down to her esophagus. He also testified that a fragment of the victim's jaw bone had broken off from the cut, and that the victim would have died if not for the surgery.

Finally, Dr. Wayne Ross, Lancaster County Forensic Pathologist, summarized at trial that the victim was cut and stabbed while inside the bag numerous times with significant force. The victim went into shock, suffocated while in the bag, and the wounds would have been fatal if not for the quick medical treatment. Moreover, the nature of the injuries reflected an attempt to decapitate the child.

On March 29, 2018, the jury found Sleets guilty on all charges. On June 21, 2018, following the completion of a pre-sentence investigation report, the trial court imposed an aggregate sentence of 26-52 years' incarceration. Sleets filed a timely notice of appeal on June 27, 2018. Both Sleets and the trial court have complied with Pa.R.A.P. 1925.

Sleets raises the following issue for our review:

Did the trial court err by failing to exclude color photographs vividly depicting the victim's injuries when in the trauma bay?

Sleet's Brief at 4.

The photographs that Sleets challenges, depict "a one-month old child, lying on a hospital bed with open, gaping wounds." *Id*. at 10. Sleets asserts "that the digital photos possess inflammatory qualities likely to inflame the passions of the viewer." *Id*. at 9. He further argues that the Commonwealth presented ample testimony from the doctor-witnesses to prove the nature and extent of the victim's injuries. As such, the photographs were merely cumulative, and therefore, unnecessary.

The Commonwealth responds that the photographs were not inflammatory, that they were highly relevant to assist the jury in understanding the facts and expert testimony, and were necessary to show that Sleets possessed the requisite intent to commit murder. Additionally, the Commonwealth points out that the trial court gave a cautionary instruction to the jury prior to having them view the photographs.

"The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Reid*, 99 A.3d 470, 493 (Pa. 2014). An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is

manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Davido***, 106 A.3d 611, 645 (Pa. 2014).

When the Commonwealth proffers photographic evidence of an injured or homicide victim, the trial court must engage in a two-part analysis to determine whether such evidence is admissible:

> First a trial court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

***Commonwealth v. Murray***, 83 A.3d 137, 157 (Pa. 2013)(citations omitted).

Here, after examining the photographs, the trial court concluded "that the photographs were not inflammatory by their very nature, and they were relevant to assist the jury's understanding of the facts." Trial Court Opinion, 8/28/18, at 8.  We agree.

Both the trial court and the Commonwealth rely on our Supreme Court's decision in ***Commonwealth v. Woodard***, 129 A.3d 480 (Pa. 2015), to support of the admissibility of the photographs in the present case.  In ***Woodard***, the trial court admitted autopsy photos in a child murder case. The photos depicted wounds from numerous beatings and blunt force trauma. In that case, an expert witness testified to the nature of the victim's injuries and cause of death, and also admitted that he could testify to such things without the photographs.  Nonetheless, on review, our Supreme Court ruled that the trial court "acted within its discretion when it concluded that the

images were not inflammatory." *Id.* at 494. Further, the Court held that even if the photographs were inflammatory, they were highly relevant and rejected that the photographs were cumulative in essence merely because the expert testified as to the nature of the injuries and the cause of the victim's death. *Id.*

Here, the trial court, like the court in **Woodard**, held that a medical examiner's testimony to the nature of the injuries did not render photographic evidence of those injuries duplicative. Further, the trial court reasoned that even if the photographs were inflammatory, they "were probative, relevant, and necessary for the Commonwealth to prove [Sleets'] intent to commit murder." Trial Court, 8/28/18, at 9.

Further, as noted cogently by the trial court, the factual circumstances presented herein are akin to those in **Commonwealth v. Stein**, 548 A.2d 1230 (Pa. Super. 1988). There, this Court found the trial court did not err in allowing the jury to see eleven inflammatory photographs of the victim's wounds, including one with a throat wound being held open. We reasoned that in order to demonstrate the crime of attempted homicide, "evidence of the extent of the victim's wounds [] was relevant to prove intent." *Id.* at 1233.

Here, we find that the trial court acted within its discretion when it concluded that the images depicted were not inflammatory. The two color

photos introduced into evidence assisted in illustrating the nature and extent of the victim's injuries.[2]

Even assuming the photos were inflammatory, we conclude that they were highly probative as they related directly to the requisite elements of attempted murder and aggravated assault, *i.e.*, that Sleets intended to kill the victim and/or cause serious bodily injury. We disagree with Sleets' argument that the photographs constituted cumulative evidence because three physicians testified in regard to the nature of the victim's injuries. ***See Commonwealth v. Pruitt***, 951 A.2d 307, 319 (Pa. 2008) (holding that photographic evidence of the victim's injuries is not rendered duplicative merely because a medical examiner or other comparable expert witness has conveyed to the jury the nature of a victim's injuries).

Accordingly, Sleets' challenge to the suppression motion fails. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

_____

[2] We note the trial court *sua sponte* gave a cautionary instruction to the jury regarding the purpose of the photographs. N.T., 3/26/18 at 271-72. Specifically, the judge told the jury the photographs were to show them the nature of the wounds sustained by the victim and to understand the testimony of the witnesses, and not to stir up their emotions to the prejudice of Sleets. *Id*. The law presumes that the jury followed the instructions given by the trial judge. ***Commonwealth v. Housman***, 986 A.2d 822, 837 (Pa. 2009).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/05/2019